**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| NICHOLAS SICINOLFI and | : | |
| THE NICHOLAS-JAMES COMPANY | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO.: |
| TOWN OF TRUMBULL, | : | 3:03 CV 929 (AWT) |
| MARLIN LIVELY, | : | |
| ANN MOORE, | : | |
| RICHARD BERNAUD and | : | |
| CHRISTOPHER PAOLETTI, | : | |
| Defendants. | : | December 3, 2004 |

<u>**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF**</u>
<u>**MOTION FOR SUMMARY JUDGMENT**</u>

The Defendants, Ann Moore, M. James Lively, Richard Bernaud, Christopher Paoletti and the Town of Trumbull, submit the following memorandum of law in support of their motion for summary judgment.

**I.      FACTUAL AND PROCEDURAL BACKGROUND**

The Plaintiffs are Nicholas Sicinolfi a/k/a Nick Sarno and the Nicholas-James Company, LLC.  On or about May 23, 2003, the Plaintiffs commenced the present action against the Defendants Town of Trumbull, M. James Lively, Ann Moore, Richard Bernaud, and

Christopher Paoletti.  The Complaint was initially asserted in five counts.[1]  Count One alleged that the individual Defendants had violated the Plaintiffs' "right to be free from false arrest, detention and groundless interdiction under the Fourth and Fifth Amendments to the United States Constitution, and plaintiffs' right to due process of the laws under the Fourteenth Amendment to the United States Constitution."  (Complaint, Count One, ¶ 22).  Count One sought redress under 42 U.S.C. §§ 1983, 1985 and 1988.  (Complaint, Count One, ¶ 24).  Count Two alleged that the individual Defendants "violated plaintiffs' right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution," and sought redress under 42 U.S.C. §§ 1983 and 1988.  (Complaint, Count Two, ¶¶ 26 and 28).  Count Three alleged that the individual Defendants "violated plaintiffs' rights to freedom of speech and association under the First Amendment to the United States Constitution," and sought redress under 42 U.S.C. §§ 1983 and 1988.  (Complaint, Count Three, ¶¶ 30 and 32).  Count Four alleged that the individual Defendants "conspired in violation of 42 U.S.C. § 1985 to violate plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution," and sought redress under 42 U.S.C. §§ 1983, 1985 and 1988.  (Complaint, Count Four, ¶¶ 34 and 36).  Finally, Count Five alleged that the Town of Trumbull "violated the rights to free speech and association, due process of the laws and equal protection of the laws guaranteed plaintiffs by the First and Fourteenth Amendments to the United States

---

[1]All citations to the original Complaint & Jury Trial Demand, dated May 22, 2003, will be simply "Complaint." Citations to the First Amended Complaint & Jury Trial Demand, dated October 16, 2003, will be "Amended

Constitution," and sought redress under 42 U.S.C. §§ 1983 and 1988.  (Complaint, Count Five, ¶¶ 38 and 41).

On or about August 28, 2003, the Defendants filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure asserting that the Court should dismiss Counts One through Four as to several of the individual Defendants for the Plaintiffs' failure to state claims upon which relief could be granted.  The Plaintiffs responded by filing an Amended Complaint, dated October 16, 2003, which the Plaintiffs' claimed added allegations sufficient to require the denial of Defendants' motion to dismiss.  (Plaintiffs' Memorandum, Oct. 16, 2003, p.2).  The Defendants replied on or about October 22, 2003 to the Plaintiffs' Amended Complaint by noting that it did not cure the deficiencies in the initial Complaint, but merely compounded them by adding personal attacks against the Defendants wholly unrelated to the Plaintiffs' causes of action.

The Court (Thompson, J.) issued its ruling upon the motion to dismiss on February 12, 2004.  The Court granted the Defendants' motion in part and denied it in part:  Count One was dismissed solely as to Moore; Count Two was dismissed as to Moore, Bernaud and Paoletti; and Count Four was dismissed as to all Defendants.  The Plaintiffs have not made any further amendments to their complaint.  The Defendants have answered the remaining allegations of the Amended Complaint and asserted affirmative defenses in response.

---

Complaint."

The undisputed material facts of this case are as follows.  Plaintiff Nicholas J. Sicinolfi is also known by the name "Nick Sarno."  (See Amended Complaint, case caption).  Sicinolfi and Detective James DeSanty of the Trumbull Police Department were co-owners of Plaintiff Nicholas-James Company, LLC since its organization in February, 1999.  (Amended Complaint, ¶ 14; Deposition of Nicholas Sicinolfi, attached hereto as Exhibit A, p. 19).  On or about February 20, 1999, Sicinolfi submitted an application for a license to carry pistols or revolvers to the Town of Trumbull.  (Affidavit of M. James Lively, attached hereto as Exhibit B, ¶ 9; Exhibit B-3).  Sicinolfi's application was processed by his business partner James DeSanty.  (Exhibit A, p. 127; Exhibit B, ¶ 11; Exhibit C, ¶ 6).

The Plaintiffs' business is self-described as "providing supervised visitation services." (Amended Complaint, ¶¶ 12-13).  The Plaintiffs allege that their task is "to assure that no harm comes to children or other parties in domestic cases during visitation."  (Amended Complaint, ¶ 12).  The Plaintiffs' business has also been described more directly as providing "protection" to children in such situations.  (Exhibit A, pp. 22-24, 196-97).

Defendant M. James Lively served as the Town of Trumbull's Acting Chief of Police in 2001.  (Amended Complaint, ¶ 5; Exhibit B, ¶ 4).  As part of his duties as Acting Chief of Police, Lively conducted a department-wide review of two matters, which are related to the Plaintiffs' claims.  First, Lively supervised the review of applications and procedures for the

issuance of pistol permits in the Town of Trumbull for preceding years. (Exhibit B, ¶¶ 5-8).[2]

Second, Lively conducted an investigation of the outside employment activities of all members

of the Trumbull Police Department. (Exhibit B, ¶¶ 12-13).

The investigation of pistol permit applications and officers' employment activities

raised questions about the legality of Sicinolfi's pistol permit application and the Plaintiffs'

business activities.[3] As to the investigation of his pistol permit application, it seemed that the

information Sicinolfi supplied was at times incomplete and at other points deliberately false.

For example, Sicinolfi did not list his alias "Nick Sarno" in his application when asked to "List

all other names by which you have been known." (Exhibit A, pp. 104-105). Sicinolfi's

application stated that he had served in the Armed Forces, but the Department of Defense had

no record of the Plaintiff serving in the military. (Exhibit B-3; Exhibit B-4; Affidavit of

Christopher Paoletti, attached hereto as Exhibit C, ¶ 6). Sicinolfi's application stated that he

had experience with pistols and revolvers through his "military service;" (Exhibit B-3); but this

statement was completely false. (Exhibit A, pp. 17, 107-108).

The investigation of Plaintiffs' business activities was the result of the department-wide

investigation of police officers' outside employment. In his response to the questions posed to

---

[2] Although she drafted the letter to Lively on behalf of the Trumbull Board of Police Commissioners which initiated his investigation of the pistol permit applications, Defendant Ann Moore was not personally involved in the investigation process, nor did she have any involvement in the resultant revocation of Sicinolfi's permit. (Affidavit of Ann Moore, attached hereto as Exhibit E, ¶¶ 5-6).

[3] Although the report from Deputy Chief Edwards apparently did not include Sicinolfi's application processed by Det. James DeSanty, Lively learned of Sicinolfi's application and reviewed it for accuracy. (Exhibit B, ¶ 9).

all employees, Det. James DeSanty told Lively that he was employed by the Nicholas-James

Company, LLC and that this business involved working as a "Personal Security Consultant."

(Exhibit B-6; Exhibit B-9).[4]  When asked for more information, DeSanty informed Lively that

his business partner's name was "Nicholas Sarno."  (Exhibit B-11).  In the course of his

investigation, Lively learned that Nicholas Sicinolfi and "Nick Sarno" were the same person,

and that Sicinolfi had failed to include any reference to his business relationship with DeSanty

in his pistol permit application.  (Exhibit A, p. 107).  Concerned by DeSanty's description of

the Plaintiffs' business activities, Lively sent a letter to the State of Connecticut Department of

Public Safety to inquire, inter alia, as to the legality of providing the self-described "supervised

visitation services."  (Exhibit B-12).  In response, Lively received a letter, dated June 28, 2001,

stating the Plaintiffs were violating Connecticut law by providing such security services

without a license.  (Exhibit B-13).

Sicinolfi came to the parking lot of the Trumbull Police Department on or about August

2, 2001, while conducting "supervised visitation services."  (Amended Complaint, ¶ 31.d.;

Exhibit B, ¶ 16).[5]  At that time, Lively noticed Sicinolfi's presence and ordered Defendant

Paoletti, assisted by Bernaud, to seize the Plaintiff's pistol permit, to determine if he was

_____

[4]The Court may note that in his deposition Plaintiff Sicinolfi denied that he worked as a security consultant,
despite his business partner's characterization, and despite Sicinolfi having listed personal security consultant as
his occupation in his tax returns.  (Exhibit A, pp. 45-49).
[5]There is a discrepancy in the evidence as to whether the incident Plaintiff describes as an arrest occurred on
August 2nd or 3rd, but this discrepancy is of little moment inasmuch as the Plaintiff concedes that he was only
arrested on one occasion, and that the arrest was for his refusal to surrender his state pistol permit.  (Exhibit A, pp.
133-34).

carrying any firearms, and to investigate his presence in the parking lot.  (Exhibit B, ¶ 16; Exhibit C, ¶ 7; Affidavit of Richard Bernaud, attached hereto as Exhibit D, ¶ 5).[6]  Sicinolfi's Town of Trumbull pistol permit was seized by the police officers, and Sicinolfi was given a letter from Lively explaining the basis for the seizure of his pistol permit.  (Exhibit A, p. 133; Exhibit B, ¶ 15-16; Exhibit B-14; Exhibit C, ¶ 7).  Sicinolfi refused on that date to produce his State of Connecticut Pistol Permit when asked to do so by Trumbull police officers.  (Exhibit A, p. 134).

Ann Moore was not personally involved in any of the actions alleged to involve a "campaign of harassment" against the Plaintiffs.  (Affidavit of Ann Moore, attached hereto as Exhibit E, ¶¶ 6-7).  For their part, after having made scandalous and irrelevant accusations against her and her family, the Plaintiffs have not come forward with any evidence that would establish that Ann Moore was even aware of their existence or had any personal feelings one way or another about them at the time of the incidents alleged in the Complaint.  (See Exhibit A, p. 63).

## II.    LAW AND ARGUMENT

### A.    Legal Standard for Motions for Summary Judgment

Federal Rule of Civil Procedure 56(c) provides, in part, that a motion for summary judgment shall be granted when a review of the record demonstrates "that there is no genuine

---

[6]In his deposition, Sicinolfi stated that there was a third police officer involved in the August, 2001 incident, but he was unable to identify him and that officer has not been named as a defendant.  (Exhibit A, p. 130-131).

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The burden falls on the moving party to establish that no relevant, material facts are in dispute. Heyman v. Commerce & Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975). In determining whether a genuine has been raised, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962) (per curiam); Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980).

   The nonmoving party, however, cannot simply rest on the allegations in his pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Federal Rule of Civil Procedure 56 (e) provides, in part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations and denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

If the movant demonstrates an absence of material issues of fact, a limited burden of production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial." (Emphasis in original; internal quotation marks omitted.) Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993). "[P]roperly employed, summary judgment is a

useful device for unmasking frivolous claims and putting a swift end to meritless litigation…. Thus, the mere possibility that a factual dispute <u>may</u> exist, without more, is not sufficient to overcome a convincing presentation by the moving party."  (Citations omitted; emphasis in original.) <u>Quinn</u>, <u>supra</u>, 613 F.2d 445; see also Donnelly v. Guion, 467 F.2d 290, 293 (2d Cir. 1972)("[w]hen a party presents evidence on which, taken by itself, it would be entitled to a directed verdict . . . it rests upon [the opposing ] party at least to specify some opposing evidence which it can adduce and which will change the result").  If the nonmovant fails to meet this burden, summary judgment should be granted.  The question is whether there is sufficient evidence to reasonably expect that a jury could return a verdict in favor of the nonmoving party.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### B.    Count One - § 1983 Unreasonable Seizure Claim

As set forth above, Count One originally was asserted against all four individual Defendants, but this Count was dismissed as to Ann Moore due to the Plaintiffs failing to adequately allege personal involvement by Moore in the alleged arrest or detention.  The remaining three individual Defendants assert that summary judgment should be granted as to them.  The Defendants assert that even if the Plaintiffs had been arrested as alleged in Count One, summary judgment is appropriate because 1) any detention was properly related to the investigation and revocation of Plaintiff Sicinolfi's pistol permit; 2) the Defendants would have

been justified in arresting Sicinolfi for violating Connecticut General Statutes § 53a-167a by

his conduct; and 3) the Defendants would have been justified in arresting Plaintiff Sicinolfi for

providing security services without a license, in violation of Connecticut General Statutes §§

29-153, et seq.

### 1.    Seizure Related to Investigation and Revocation of Pistol Permit

Although there were no charges ever filed against the Plaintiffs by the Town of

Trumbull; (Exhibit A, p. 137; Exhibit B, ¶ 17); the Plaintiffs allege that Sicinolfi was detained

and arrested by Defendants Lively, Paoletti and Bernaud on August 2, 2001, at the Trumbull

Police Station.  (Amended Complaint, ¶ 31.d.).  Nevertheless, solely for the sake of the instant

motion, the Defendants will assume, arguendo, that the Plaintiff was seized on August 2, 2001

and that such seizure constitutes an "arrest" for purposes of the application of the Fourth

Amendment of the United States Constitution.[7]  Whether or not Sicinolfi was "arrested," it was

appropriate for the Defendants to conduct an investigation into his conduct on August 2, 2001.

This investigation was appropriate due, in part, to his false and misleading statements made in

his application for a pistol permit from the Town of Trumbull.  In fact, the Defendants had

---

[7]The Plaintiffs' allegations of an arrest, however, are curious in light of the fact that Plaintiff Sicinolfi testified at his deposition that he believed he was under arrest and not free to leave the police station on August 2, 2001, but that he left regardless, without being given permission to do so.  (Exhibit A, pp. 134-137).  Indeed, Sicinolfi's conduct in leaving the Police Department would subject him to criminal prosecution for Escape from Custody, pursuant to Connecticut General Statutes § 53a-171, had the events actually transpired as described by the Plaintiffs.  See, generally, State v. Laws, 37 Conn. App. 276, 280-85, 655 A.2d 1131 (discussing proof of escape from custody), cert. denied, 234 Conn. 907, 659 A.2d 1210 (1995).

probable cause to arrest Sicinolfi on August 2, 2001 for violating Connecticut General Statutes § 53a-157b.

The Fourth Amendment to the United States Constitution provides, in pertinent part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." It is well-settled that a valid arrest may be made without a warrant where the arrest is properly supported by probable cause. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." Atwater v. City of Lago Vista, 532 U.S. 318, 354, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001); see also Oliver v. Woods, 209 F.3d 1179, 1186 (10th Cir. 2000)("An officer may make an arrest without a warrant if the officer has probable cause to believe a crime has been committed by the arrestee."). "There is probable cause when the arresting officer has knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." (Internal quotation marks omitted.) O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993).

"Of course, state law defines the authority of an officer to arrest for a given offense; federal law only asks whether the officer had probable cause to believe that the predicate offense had been committed. Michigan v. DeFillippo, 443 U.S. 31, 36, 99 S.Ct. 2627, 2631, 61 L.Ed.2d 343 (1979) ('Whether an officer is authorized to make an arrest ordinarily depends, in

the first instance, on state law.')." <u>Richardson v. Bonds</u>, 860 F.2d 1427, 1342 n.4 (7th Cir.

1988).

     In this regard, the Court should note, "[Connecticut] General Statutes [§ ]54-1f(a)

authorizes police officers to arrest an individual without a warrant, for any offense in their

jurisdiction, when the person is taken or apprehended in the act or on the speedy information of

others ... [A] warrantless misdemeanor arrest must be supported by probable cause." (Internal

quotation marks omitted.) <u>State v. Santiago</u>, 224 Conn. 494, 498, 619 A.2d 1132 (1993).

     Connecticut recognizes that "[p]robable cause to arrest exists if (1) there is probable

cause to believe a crime has been committed; and (2) there is probable cause to believe that the

person to be arrested committed that crime ... Probable cause exists when the facts and

circumstances within the knowledge of the officer and of which he has a reasonably

trustworthy information are sufficient in themselves to warrant a man of reasonable caution to

believe that a [crime] has been committed." (Citations omitted.) <u>State v. Trine</u>, 236 Conn.

216,236, 673 A.2d 1098 (1996). The test for determining probable cause is objective, and

requires more than mere suspicion. <u>Id.</u>, 237. "[T]he line between mere suspicion and probable

cause necessarily must be drawn by an act of judgment formed in light of the particular

situation and with account taken of all the circumstances ... In dealing with probable cause ... as

the very name implies, we deal with probabilities. These are not technical; they are factual and

practical considerations of everyday life on which reasonable and prudent men, are not legal

technicians, act." (Citations omitted; internal quotation marks omitted.) State v. Trine, supra, 236 Conn. 236-37.

The Plaintiffs state that Sicinolfi was arrested for refusing to surrender his state pistol permit. (Exhibit A, pp. 133-34). There is no disagreement between the parties that the August 2, 2001 incident was connected with his pistol permit. The Defendants, however, assert that the investigation into Sicinolfi's conduct was appropriate in light of his false and misleading responses given in his pistol permit application and due to the fact that his business partner processed said application. There can be no legitimate dispute that it was inappropriate for Sicinolfi's friend and business partner, James DeSanty, to conduct the background investigation for Sicinolfi's pistol permit application. (See Exhibit B, ¶ 11; Exhibit B-13). The application itself contained incomplete and inaccurate responses, which were only disclosed once an independent investigation was conducted. (Exhibit B, ¶ 11; Exhibit C, ¶¶ 5-6). Given these concerns, it was more than reasonable that the Defendants seize Sicinolfi's pistol permit.

Furthermore, the Defendants assert that the undisputed facts which were known to them on August 2, 2001, provided probable cause to believe that Plaintiff Sicinolfi had committed the crime of False Statement in the Second Degree, pursuant to Connecticut General Statutes § 53a-157b.[8] The Town of Trumbull pistol permit application signed by Sicinolfi and witnessed

---

[8]Section 53-157b provides: "(a) A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect

by a notary public, bore the notice "I declare, under the penalties of False Statement, that the answers to the above are true and correct." (Exhibit B-3). The application contained information which Sicinolfi knew to be false at the time the application was submitted, including: 1) the failure to list his alias "Nick Sarno"; 2) stating he was "self-employed" rather than listing the Nicholas-James Company as his business; and 3) stating he received training on pistols and revolvers during military service. (Exhibit A, pp. 103, 105, 108; Exhibit B, ¶ 11; Exhibit B-3; Exhibit C, ¶ 6). Where there is no genuine issue of material fact that Sicinolfi's pistol permit contained these falsehoods, it would have been appropriate for the Defendants to arrest Sicinolfi on the spot for violating Connecticut General Statutes § 53a-157b.

### 2. Arrest for Interfering With an Officer; Conn. Gen. Stat. § 53a-167a; Justified In Light of Sicinolfi's Conduct

Plaintiff Sicinolfi testified that he was arrested on August 2, 2001 for refusing to surrender his state pistol permit when asked to do so by police officers. (Exhibit A, pp. 133-34). This refusal by the Plaintiff to cooperate in a lawful police investigation into his illegal conduct was itself a violation of Connecticut law.

Connecticut General Statutes § 53a-167a provides:

---

that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.
"(b) False statement in the second degree is a class A misdemeanor."

"(a) A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties.

"(b) Interfering with an officer is a class A misdemeanor."

The Plaintiff had no right to retain possession of a state pistol permit which he had gained by false and misleading information on his application to the Town of Trumbull.  By refusing to surrender his state pistol permit on August 2, 2001, Plaintiff Sicinolfi was attempting to "hamper the activities of the police in the performance of their duties," thus violating Connecticut law.  See White v. Wortz, 66 F. Supp. 2d 331, 334 (D.Conn. 1999); State v. Biller, 5 Conn. App. 616, 621, 501 A.2d 1218 (1985) (upholding conviction for interfering based upon arrestee's refusal to surrender documents in his possession),  cert. denied, 199 Conn. 803, 506 A.2d 146, cert. denied, 478 U.S. 1005, 106 S.Ct. 3296, 92 L.Ed.2d 711 (1986).

Moreover, the United States Supreme Court has acknowledged the propriety of allowing police officers a reasonable amount of discretion in conducting investigations into suspected criminal activity.  Recently, in Hiibel v. Sixth Judicial District Court of Nevada, United States Supreme Court No. 03-5554 (June 21, 2004), the Court held that an arrest of a Terry stop suspect for refusal to identify himself, in violation of Nevada law, did not violate the Fourth Amendment prohibition against unreasonable searches and seizures, because the stop

was reasonable and plaintiff did not claim that the statute was unconstitutionally vague.  The

Court also concluded that the defendant's conviction for refusal to identify himself did not

violate his Fifth Amendment right against self-incrimination because disclosure of his name

and identity presented no reasonable danger of incrimination.  The principle set forth by the

majority in <u>Hiibel</u> supports a conclusion that there was no violation of the Plaintiffs'

constitutional rights under the circumstances.

 Even if the August 2, 2001 incident occurred precisely as described by the Plaintiff in

his deposition, the police officers' conduct was completely appropriate and supported by

Connecticut law.  In spite of the lack of formal charges being filed against Plaintiff Sicinolfi, he

violated Connecticut law, and an arrest would have been proper under the circumstances.

### 3. Plaintiffs Providing Security Services Without License

 The Plaintiffs' Amended Complaint is nothing less than an admission of their own

violation of Connecticut law.  The Plaintiffs are not entitled to continue providing "supervised

visitation services" in the guise of the unlicensed and unqualified Plaintiff Sicinolfi.  The

Defendants would have been justified in arresting the Plaintiffs for violating Connecticut

General Statutes §§ 29-153, <u>et seq</u>.

 The Plaintiffs' business is self-described as "providing supervised visitation services."

(Amended Complaint, ¶¶ 12-13).  The Plaintiffs allege that their task is "to assure that no harm

comes to children or other parties in domestic cases during visitation."  (Amended Complaint, ¶

12).  The Plaintiffs' business has also been described more directly as providing "protection" to

children in such situations.  (Exhibit A, pp. 22-24, 196-97).

Connecticut General Statutes § 29-153 provides as follows:

No person shall engage in the business of, or solicit business as a private detective or investigator or as a watchman, guard or patrol service or represent himself to be, hold himself out as or advertise as a private detective or investigator or as furnishing detective or investigating services or as a watchman, guard or patrol service without first obtaining a license from the Commissioner of Public Safety.

In addition, Connecticut General Statutes § 29-161 provides:

Any person who violates any provision of sections 29-153 to 29-161, inclusive, shall be fined not more than five thousand dollars or imprisoned not more than one year or both.

The Plaintiffs will no-doubt deny that they were violating Connecticut law each and

every time that they engaged in "supervised visitation services."  Nevertheless, the Plaintiffs'

description of "supervised visitation services" falls within the category of "watchman, guard or

patrol service" as those terms are used in the statute.  Conn. Gen. Stat. § 29-153.

The terms "watchman, guard or patrol service" are not specifically defined in the statute

itself.  Instead, the Court should consider the Opinion of the Attorney General, Opinion No. 86-

65 (August 26, 1986), in determining the scope of these terms.  In that Opinion, former

Attorney General of the State of Connecticut Joseph Lieberman utilizes the method commonly

approved by Connecticut courts of looking to the standard dictionary definition of terms when

the terms are not specifically defined in statutes.  The Attorney General's opinion notes that

"guard" is defined as "one that defends against injury danger or attack … a man or body of men stationed to protect or control a person or position."

The District Court may also consider the regulation promulgated by the Connecticut Department of Revenue Services, Section 12-426-27, which defines "Private investigation, protection, patrol, watchman and armored car services" as follows:

> Such services mean and include providing personnel or canines to patrol or guard property; engaging in detective or investigative duties; safeguarding or maintaining a surveillance of an individual; maintaining and monitoring mechanical protective devices, such as burglar and fire alarm systems; providing armored cars for the transportation of valuables; wrapping coins; setting up a payroll; and the rendering of police services by an off-duty policeman.

> (Emphasis added.)

And, finally, the Court should consider the fact that Defendant Lively consulted the Connecticut Department of Public Safety with regard to the legality of the Plaintiffs' activities. (Exhibit B, ¶ 14; Exhibit B-12). The Connecticut Department of Public Safety responded to Defendant Lively's inquiry by stating, "From the evidence presented by your investigator, the Nicholas-James Company is more than a security consultant company; they are providing security for which they must obtain a license. Our records indicate the Nicholas-James Company is not a licensed security company and they are in violation of several sections of chapter 534 of the Connecticut General Statutes" (Exhibit B-13).

The Defendants violated Connecticut General Statutes § 29-153 by providing what they term "supervised visitation services." If the Plaintiffs were arrested on August 2, 2001, that

arrest was proper, and summary judgment should enter as to any claims based upon such an arrest.

### C.     Count Two – § 1983 Equal Protection Claim

In Count Two, the Plaintiffs attempted to assert a claim under 42 U.S.C. § 1983 for Defendants' alleged violation of Plaintiffs' rights under the Fourteenth Amendment equal protection clause.  The Court has dismissed Count Two as to all Defendants but Lively.  In its ruling on the Defendants' motion to dismiss, the Court held that the Complaint alleges one action by Lively that might qualify under this cause of action: revocation of pistol permit. (Ruling on Motion to Dismiss, p.10).

In its Ruling, the Court noted that the United States Supreme Court has recognized "class of one" equal protection claims in limited circumstances.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).  As quoted by the District Court here, to state a "class of one" claim, a plaintiff must allege that he or she "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  Id.  The Plaintiffs' claim cannot survive this analysis.

The Plaintiffs have not come forth with any evidence of other persons making false and misleading statements in their pistol permit applications, whose permits were approved or treated differently than Plaintiff Sicinolfi's by Defendant Lively.  In fact, Defendant Lively conducted a review of all of the pistol permit applications over several previous years.  (Exhibit

B, ¶¶ 5-8).  Furthermore, there was a rational basis for the revocation of Sicinolfi's pistol permit given the information available to Defendant Lively.  (Exhibit B, ¶ 11; Exhibit B-13).

Wherefore, the Court should grant summary judgment as to Count Two of the Complaint.

### D.    Count Three - § 1983 First Amendment Claim

In Count Three, the Plaintiffs attempt to assert that the individual Defendants violated the Plaintiffs' rights to freedom of speech and association under the First Amendment to the United States Constitution.  The Plaintiffs allege that the Defendants subjected the Plaintiffs to "a campaign of harassment" as a consequence of the alleged relationship between the Plaintiffs and certain disfavored members of the Trumbull Police Department and as a consequence of the Plaintiff allegedly publicly criticizing the Defendants.  (Amended Complaint, ¶¶ 31-35).  The Plaintiffs have produced no evidence to support such a claim, and the facts underlying the so-called "campaign of harassment" demonstrate that there were legitimate reasons for each of the actions taken.

First, as to Defendant Ann Moore, there is no connection between Ann Moore and the Plaintiffs whatsoever.  The Plaintiffs are not personally acquainted with Ann Moore.  Despite the Plaintiffs making numerous malicious allegations against Ann Moore and her family in the body of their Amended Complaint; (see Amended Complaint, ¶¶ 18, 28); the Plaintiffs could not state how many sons Ann Moore has or what their names are.  (Exhibit A, pp. 76, 78).  For

her part, Defendant Moore was not even aware of the Plaintiffs' existence at the time of the incidents alleged in the Complaint.  (Exhibit E, ¶¶ 6-7).  The Plaintiffs have chosen to give vent to their personal animosity towards Defendant Moore through the federal courts, but they have failed to produce any evidence linking Defendant Moore to the actions taken against the Plaintiffs.  Defendant Moore has submitted an affidavit, which establishes that she was not involved in the alleged "campaign of harassment."  (Exhibit E, ¶ 7).  In light of this undisputed evidence, the Court should grant summary judgment as to the sole remaining claim against Ann Moore.  As to the remaining Defendants, Lively, Bernaud and Paoletti, these Defendants' actions were appropriate in light of the Plaintiffs' illegal activities, despite the label "campaign of harassment" given by the Plaintiffs.

The first incident described as part of the "campaign of harassment" involves police cruisers being sent to Plaintiff Sicinolfi's home in mid-April, 2001 with regard to a suspected unregistered motor vehicle.  (Amended Complaint, ¶ 31.a.).  The Plaintiffs were not witnesses to this portion of the "campaign," but, from what Plaintiff Sicinolfi testified to in his deposition, it is clear that the Defendants were not involved in any wrongdoing.  (Exhibit A, pp. 139-42; Exhibit B, ¶ 18; Exhibit C, ¶ 8; Exhibit D, ¶ 6).  Apparently, Plaintiff Sicinolfi had done a "supervised visitation service" in the parking lot of the Trumbull Police Department using a car that had either transferred plates or new plates.  (Exhibit A, pp. 139-41).  When a question arose as to the registration, two police cruisers were sent to Plaintiff Sicinolfi's house.

(Exhibit A, pp. 139-140).  Once Plaintiff Sicinolfi heard of the investigation, he went to the Trumbull Police Department with documentation establishing the registration of the vehicle. (Exhibit A, p. 142).  The Defendants, however, were not involved with this investigation and only learned about it after the fact.  (Exhibit B, ¶ 18; Exhibit C, ¶ 8; Exhibit D, ¶ 6).

The second incident described involves Defendant Bernaud allegedly detaining one of the Plaintiffs' clients on May 21, 2001, in order to question the client about the Plaintiffs. (Amended Complaint, ¶ 31.b.).  Despite having made this allegation, the Plaintiffs have no first-hand knowledge of this incident.  (Exhibit A, pp. 61-62, 146).  Moreover, Defendant Bernaud has provided an affidavit that establishes he was not involved in any such incident. (Exhibit D, ¶ 7).

The third and fifth incidents described as part of a "campaign of harassment" involve Defendant Lively contacting Plaintiff Sicinolfi to make inquiries into his pistol permit application and, ultimately, revoking the pistol permit.  (Amended Complaint, ¶31.c.).  Despite the Plaintiffs' conclusion in their Amended Complaint that "there was no legal ground to revoke [the pistol permit]," the Defendants have shown that there existed ample, multiple grounds upon which Plaintiff Sicinolfi's pistol permit should be revoked.  (See Exhibit A, pp. 105, 108; Exhibit B, ¶ 11; Exhibit C, ¶ 5-6).  The Plaintiffs have no cause to complain against the investigation which arose as the result of Sicinolfi's own illegal conduct.

The fourth incident has already been discussed in connection with the Defendant argument as to Count One of the Amended Complaint.  The Plaintiffs assert that Defendants Lively, Paoletti and Bernaud falsely arrested Plaintiff Sicinolfi at the Trumbull Police Department.  (Amended Complaint, ¶ 31.d.).  As noted in Part II.B. of this memorandum, there were ample grounds to support an arrest of Sicinolfi in response to his illegal activities.

There is no genuine issue of material fact which would support a conclusion that the Defendants engaged in a "campaign of harassment" as alleged in the Amended Complaint. Wherefore, the Court should enter summary judgment as to Count Three of the Amended Complaint.

**E.      Defendants Entitled to Qualified Immunity in Relation to the Incidents Alleged as Campaign of Harassment**

Although the Defendants have demonstrated the absence of any proof of wrongdoing on their parts, they assert as an additional, alternative basis for granting summary judgment as to Counts One, Two and Three that the doctrine of qualified immunity shields them from liability.

"The defense of qualified immunity shields government officials from civil liability if the official's conduct did not violate constitutional rights that were clearly established at the pertinent time or if it was objectively reasonable for the official to believe that the conduct did not violate such rights."  Cecere v. City of New York, 967 F.2d 826, 829 (2d Cir. 1992). Furthermore, "[e]ven defendants who violate constitutional rights enjoy a qualified immunity that protects them from liability for damages unless it is further demonstrated that their conduct

was unreasonable under the applicable standard." Davis v. Scherer, 468 U.S. 183, 190, 104

S.Ct. 3012, 82 L.Ed.2d 139 (1984).  A subjective inquiry into a government employee's

motivations in acting or refusing to act has been rejected because it generally implicates

questions of fact and is therefore incompatible with the expressed policy that summary

judgment be readily available to protect government employees from suit. See Harlow v.

Fitzgerald, 457 U.S. 800, 815-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  "Summary

judgment on the issue of objective reasonableness is appropriate where no reasonable jury

could conclude that it was objectively unreasonable for defendants to believe they were acting

in a manner that did not clearly violate an established federally protected right."  (Emphasis in

original.) Smart v. Morgillo, Docket No. 3:00cv1281, 2001 WL 802697, *2 (D. Conn. Jul. 10,

2001); see also Lennon v. Miller, 66 F.3d 416, 423-26 (2d Cir.1995) (finding qualified

immunity for false arrest, malicious prosecution and excessive force claims).

        In the present case, the individual Defendants' conduct was objectively reasonable.

First, as noted in Part II.D., there is not one iota of evidence which connects Defendant Moore

to the investigation or alleged arrest of the Plaintiffs.  Even if there were such evidence,

however, the undisputed facts available to the Defendants at the time of the incidents alleged in

the Amended Complaint establish that their actions towards the Plaintiffs were objectively

reasonable.  As noted in detail at Part II.B. of this memorandum, the Plaintiffs appear to have

committed at least three violations of Connecticut law for which the Defendants could have

arrested Plaintiff Sicinolfi or fined Plaintiff Nicholas-James Company, LLC.  The fact that the

Plaintiffs were never formally charged with a crime; (see Exhibit A, p. 137); does not change

the fact that there was an objective basis which would have supported such an arrest.

Therefore, the Defendants are shielded from liability by qualified immunity, and the Court may

grant summary judgment in favor of the Defendants on that ground in addition to those already

set forth herein.

    In considering the applicability of the doctrine of qualified immunity to the present

case, the Defendants submit that the following cases may also provide insight for the Court's

decision.  "With respect to whether a wrongful arrest has occurred, considerable uncertainty

must be tolerated on occasion because of the need to allow the police to take immediate

affirmative action in ambiguous circumstances….  The Constitution therefore does not

guarantee that only guilty persons will be arrested."  (Citation omitted; internal quotation marks

omitted.) Lukos v. Bettencourt, 23 F. Supp. 2d 175, 177 (D. Conn. 1998);  see also Krause v.

Bennett, 887 F.2d 362, 371 (2d Cir. 1989) (noting that probable cause does not require an

officer to be certain that subsequent prosecution of the arrestee will be successful); Mozzochi v.

Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992) (holding defendants qualifiedly immune from

liability under First Amendment claim where criminal prosecution was supported by probable

cause); Johnston v. City of Houston, 14 F.3d 1056, 1060-61 (5th Cir. 1994) (qualified immunity

where complaint failed to allege sufficient involvement on part of defendant).

### F.    Count Five – §§ 1983 and 1988 Against Town of Trumbull

Count Five of the Amended Complaint incorporates all of the allegations set forth in Counts One, Two and Three and brings a claim directed solely towards Defendant Town of Trumbull.  The Plaintiffs, however, have failed to demonstrate any violation of their rights. Defendant Town of Trumbull is not liable where there has been no underlying violation of Plaintiffs' rights.

It cannot be disputed that the Plaintiffs' failure to demonstrate the existence of evidence in support of the alleged underlying violations must result in the Court granting summary judgment as to the Plaintiffs' claims against the Town of Trumbull.  "It is clearly established that a municipality cannot be held liable under § 1983, whether on a failure to train theory or municipal custom and policy theory, unless the municipal/state employee is found liable on the underlying substantive constitutional claim."  Friedman v. City of Overland, 935 F.Supp. 1015, 1018 (E.D.Mo. 1996); see also Los Angeles v. Heller, 475 U.S. 796, 799, 106 S. Ct. 1571, 89 L. Ed. 2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officers, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point."); Curley v. Village of Suffern, 268 F.3d 65, 71 (2d Cir. 2001) ("a municipality cannot be held liable for inadequate training or supervision when the officers involved in making an arrest did not violate the plaintiff's constitutional rights")..

In the present case, the individual Defendants have set forth irrefutable evidence of the Plaintiffs' illegal conduct.  There was no violation of the Plaintiffs' rights where 1) Plaintiff Sicinolfi had no right to retain a pistol permit gained by false and misleading answers in his application and where the application was processed by his business partner, James DeSanty (<u>see</u> Part II.B.1.);  2) Plaintiffs were engaged in providing security services without a license (see Part II.B.3.);  and 3) there was an objective, rational basis for each of the actions alleged to involve a "campaign of harassment."  (See Part II.D.).

The Defendant Town of Trumbull has no liability to the Plaintiffs for any claimed underlying violation of their rights, because the evidence is undisputed that the Plaintiffs' rights were never violated.  The Court should enter summary judgment in favor of Defendant Town of Trumbull as to Count Five.

### III.    CONCLUSION

The Plaintiffs have made scandalous, irrelevant and unsupported allegations against the Defendants.  The Plaintiffs have had more than enough opportunity to come forward with evidence to support their claims against the Defendants.  What the evidence has established, however, is a clear pattern of wrongdoing on the part of the Plaintiffs, with no indications of any wrongdoing or improper motives on the part of the Defendants.

WHEREFORE, the Court should enter summary judgment as to Counts One through Three and Count Five.

DEFENDANTS,
TOWN OF TRUMBULL,
MARLIN LIVELY, ANN MOORE,
RICHARD BERNAUD and
CHRISTOPHER PAOLETTI


By:  _____
Stuart E. Brown (ct 24659)
Hassett & George, P.C.
555 Franklin Avenue
Hartford, Connecticut 06114
(860) 296-2111

28

## **CERTIFICATION**

This is to certify that a copy of the foregoing has been mailed this ___ day of

December, 2004 to the following counsel and/or pro se parties of record:

William B. Barnes, Esq.
Rosenstein & Barnes
1100 Kings Highway East
Fairfield, CT  06825

_____
Stuart E. Brown

\\Sbs2k\shared\Northland Cases\Sicinolfi, Nicholas, et al v. Town of Trumbull, et al\Pleadings\Memo to support Motion for Summary
Judgment.doc