UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS SICINOLFI and | : | CIVIL ACTION NO. |
| THE NICHOLAS-JAMES COMPANY, LLC, | : | 303 CV 929 (AWT) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF TRUMBULL, | : | |
| MARLIN LIVELY, | : | |
| ANNE MOORE, | : | |
| RICHARD BERNARD and | : | |
| CHRISTOPHER PAOLETTI, | : | |
| *Defendants*. | : | Jan. ___ , 2005 |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## I.    INTRODUCTION

Plaintiff Nicholas Sicinolfi respectfully submits this memorandum in opposition to Defendants' Dec. 3, 2004 motion for summary judgment.  Plaintiff Sicinolfi opposes summary judgment only as to the claims against Defendants Marlin Lively, Richard Bernaud and Christopher Paoletti in Count One.

## II.  FACTS

On Aug. 3, 2001, Plaintiff was sitting in his car in the parking lot (Pl. Dep. Tr. page 139, lines 6-8) of the Trumbull

police station. (Pl. Dep. Tr. 130, line 25, 131, lines 1-5). Plaintiff was waiting for supervised visitation clients to arrive and exchange children. (Pl. Aff. Para. 3).

Plaintiff looked up and saw three police officers approaching his car with their hands on their weapons. (Pl. Dep. Tr. page 131, lines 7-10). Plaintiff knew two of them to be Defendants Bernaud and Paoletta. (Pl. Dep. Tr. page 131, lines 11-12). The three officers surrounded Plaintiff's car. Defendant Bernaud was on one side. Defendant Paoletti was on the other side and the third officer was in front of the car. (Pl. Dep. Tr. page 138, lines 20-25). Plaintiff's freedom of movement was limited by Defendants Bernaud and Paoletti and by the third officer. Plaintiff could not drive away. (Pl. Aff. Para. 3).

Plaintiff saw Defendant Lively, Acting Chief of the Trumbull Police Department, standing in a window on the second floor of the station. (Pl. Dep. Tr. page 183, lines 17-25, page 184, lines 1-8). That window overlooks the entrance and the stairs and part of the parking lot. (Pl. Dep. Tr. page 184, lines 9-12). Defendant Lively could see what was happening. (Pl. Aff. Para. 6).

-2-

Defendant Paoletti handed Plaintiff a letter from Defendant Lively to Plaintiff. Plaintiff opened and read the letter. In the letter Defendant Lively revoked Plaintiff's Town pistol permit. Plaintiff immediately surrendered his town pistol permit to Defendant Bernaud. (Pl. Dep. Tr. page 133, lines 9-13; Pl. Aff. Para. 4).

Defendants Paoletti and Bernaud then asked Plaintiff to surrender his State pistol permit to them. Plaintiff refused. Connecticut state law provides that a State pistol permit is revoked by the Department of Public Safety. The permit holder must surrender the state permit to the Department of Public Safety. Notwithstanding, Defendants Bernaud and Paoletti demanded the State permit. Plaintiff refused their demand. Defendant Bernaud told Plaintiff that he was under arrest for refusing to surrender the State permit. (Pl. Aff. Para. 5).

Plaintiff was sitting in his car when Defendant Bernaud told him that he was under arrest (Pl. Dep. Tr. 138, lines 2-6). Plaintiff was escorted into the police station by the officers. Defendant Bernaud told Plaintiff that he was under arrest in the station house. (Pl. Dep Tr. page 138, lines 7-10). Defendant

Paoletti also told Plaintiff that he was under arrest in the station house. (Pl. Dep. Tr. page 138, lines 14-19).

Defendant Paoletta took his handcuffs out. Plaintiff prepared to be cuffed by taking his watch off (so it wouldn't be crushed) and putting his hands behind his back. (Pl. Dep. Tr. page 138, lines 14-19; Pl. Aff. Para. 8). At this point Defendant Bernaud stopped handcuffing Plaintiff. (Pl. Dep. Tr. page 185, lines 15-19). Instead he ordered Plaintiff to wait inside the lobby of the station. (Pl. Dep. Tr. 134, lines 9-14; Pl. Aff. 8). While Plaintiff was in the lobby Defendant Bernaud again told the Plaintiff that he was under arrest. (Pl. Dep. Tr. page 138, lines 11-13; page 185, lines 17-19).

During this period Defendants Paoletti and Bernaud again demanded that Plaintiff give them his state permit. (Pl. Dep. Tr. 134, lines 15-17).

Plaintiff remained in the lobby as he had been directed by Defendant Bernaud. (Pl. Dep. Tr. 135, lines 5-17) for about an hour and a half more. (Pl. Dep. Tr. page 147, lines 24). During that time neither the Defendants nor any other member of the Trumbull police department took any other steps to complete the formalities

-4-

of Plaintiff's arrest, to talk to him, or to instruct him further regarding his submission to their authority. (Pl. Aff. Para. 9). Nor did it appear to the Plaintiff that the Defendants intended to complete the formalities of his arrest that afternoon. (Pl. Aff. Para. 9). Therefore the Plaintiff informed the officer at the desk that he intended to leave to arrange bail. (Pl. Dep. Tr. page 135, lines 17-20; Pl. Aff. Para. 9). Plaintiff got in his car and left. Plaintiff in fact took steps to arrange sufficient bail. (Pl. Dep. Tr. page 135, lines 17-25, page 136, lines 1-2; Pl. Aff. Para. 9). The Trumbull police officers took no further steps to consummate a formal arrest of the Plaintiff. (Pl. Dep. Tr. 137, lines 10-13; Pl. Aff. Para. 9).

Plaintiff did not consent to the arrest. (Pl. Aff. Para. 10).

## III. ARGUMENT

### A.    The Elements of a False Arrest Claim Under Sec. 1983

Plaintiff's false arrest claim, Amended Complaint, Count One, was brought under 42 U.S.C. Sec. 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other

> person within the jurisdiction thereof to the deprivation
> of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or some
> other proper proceeding for redress.

Section 1983 is not a source of substantive rights. It provides a method for vindicating federal rights elsewhere conferred. <u>Baker v. McCollan</u>, 443 U.S. 137, 144, n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979). The first step in analyzing a Sec. 1983 claim is to identify the specific constitutional right allegedly infringed. <u>See</u> <u>Graham v. Connor</u>, 490 U.S. 386, 394, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989); <u>Baker</u>, 443 U.S. at 140.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons,
> houses, papers and effects, against unreasonable searches
> and seizures, shall not be violated, and no Warrants
> shall issue, but upon probable cause, supported by Oath
> or affirmation, and particularly describing the place to
> be searched, and the persons or things to be seized.

The due process clause of Section 1 of the Fourteenth Amendment to the United States Constitution provides "nor shall any State deprive any person of life, liberty or property without due process of law;... ." The Fourth Amendment's guarantee against unreason-

able searches and seizures applies to the states through this clause. Mapp v. Ohio, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L.Ed. 2d 1081 (1961).

An action under Sec. 1983 will lie for violation of Fourth Amendment rights by state officers. See Monroe v. Pape, 365 U.S. 167, 168-87, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Haynes v. City of New London, 3:99CV2551(CFD), 2002 U.S. Dist. LEXIS 10366 *4 (D. Conn. May 17, 2002) ("Claims for false arrest under the Fourth Amendment of the United States Constitution are cognizable under Sec. 1983.")

A false arrest claim under 42 U.S.C. Sec. 1983 requires the plaintiff to establish four things: (1) the defendants intention-ally arrested him or had him arrested; (2) the plaintiff was aware of the arrest; (3) there was no consent to the arrest; and (4) the arrest was not supported by probable cause. Chipperini v. Crandall, 253 F. Supp. 2d 301, 305 (D. Conn. 2003) (Droney, J.), citing Arum v. Miller, 193 F. Supp. 2d 572, 585 (E.D.N.Y. 2002); see also Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1998); United States v. Ceballos, 812 F.2d 42, 50 (2d Cir. 1987).

These requirements are satisfied in this case. Defendants Paoletta, Bernaud and Lively intentionally arrested Plaintiff. They so informed the Plaintiff. Plaintiff was, therefore, aware that he had been arrested. Plaintiff did not consent to the arrest. He submitted to the Defendants' authority. Plaintiff's vehicle was blocked by Defendants, he was not free to go and he accompanied Defendants into the station house under their authority, as they repeatedly told him that he was under arrest. Finally, as will be seen in more detail below, the arrest was not supported by probable cause.

Defendants attack the first and fourth elements of Plaintiff's proof of false arrest. Defendants admit that they briefly stopped Plaintiff as part of an investigation of his activities but deny that there was an arrest. (Defs. SJ Memo, at 9-10, 13-14; Lively Aff. Para. 17 "To the best of my knowledge, Nicholas J. Sicinolfi a/k/a Nick Sarno was never arrested by a member of the Trumbull Police Department. At no time did I direct an officer of the Trumbull Police Department to arrest Mr. Sicinolfi."); Bernaud Aff. Para. 5 (a "brief investigation into Sicinolfi's business activi-

ties was conducted.") Defendants go on to say that if an arrest took place there was probable cause for it.

### 1.    Defendants Bernaud, Paoletti and Lively Arrested Plaintiff

The Supreme Court has long recognized that the elements and defenses of such causes of action as false arrest are to be construed by reference to common law. See Wilson v. Garcia, 471 U.S. 261, 277, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985); see also Hickey v. City of New York, 01 Civ. 6506, 2004 U.S. Dist. LEXIS 23941, *20-21 (S.D.N.Y. Sept. 29, 2004) (looking to state common law of false arrest in deciding a motion addressed to false arrest under 42 U.S.C. Sec. 1983).

The Connecticut common law definition of false arrest is the unlawful restraint by one person of the physical liberty of another. The plaintiff must prove that his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly. See Green v. Donroe, 186 Conn. 265, 267, 440 A.2d 973 (1982) ("false imprisonment, or false arrest, is the unlawful restraint by one person of the physical liberty of

-9-

another."); <u>Outlaw v. City of Meriden</u>, 43 Conn. App. 387, 392, 682
A.2d 1112, <u>cert. denied</u>, 239 Conn. 946, 686 A.2d 122 (1996); <u>Lo
Sacco v. Young</u>, 20 Conn. App. 6, 564 A.2d 610 (1989).

The Second Circuit discussed the factors which make a stop an
arrest in <u>Oliveira v. Mayer</u>, 23 F.3d 642, 645 (2d Cir. 1994), a
case involving the legality of arrests by Stamford, Connecticut
police officers:

> the amount of force used by police, the need for such
> force, and the extent to which the individual's freedom
> of movement was restrained, ... and in particular such
> factors as the number of agents involved ... ; whether
> the target of the stop was suspected of being armed ...;
> the duration of the stop ...; and the physical treatment
> of the suspect ..., including whether or not handcuffs
> were used.

The police do not have to use the word "arrest" for there to
be an arrest.  The test is objective.  Custody equivalent to an
arrest exists if (a) a reasonable person in that position would
have understood himself to be subjected to restraints comparable to
those associated with a formal arrest, and (b) there are affirma-
tive indications that the person in custody was not free to leave.
An accused is in custody when, even in the absence of an actual
arrest, law enforcement officials act or speak in a manner that

conveys the message that they would not permit the accused to leave. United States v. Kirsh, 54 F.3d 1062, 1067 (2d Cir.), cert. denied, 516 U.S. 927, 116 S. Ct. 330, 133 L. Ed. 2d 230 (1995).

The facts strongly suggest that Plaintiff was placed under arrest.

- Defendants told Plaintiff three times that he was under arrest for refusing to surrender his state pistol permit to them.

- Plaintiff's car was blocked by three officers.  He could not have driven away if he had wanted to.

- Plaintiff was taken from his car into the Police Station, and moved from one part of the station to another, by Defendants Bernaud and Paoletti.

- The officers made a show of force when they approached Plaintiff.  Their hands were on their guns.

- Plaintiff was not free to leave.  During the first part of the arrest Plaintiff was compelled to follow Defendant officers. Plaintiff's freedom of movement was restrained when Defendant Bernaud told him to sit in the lobby.  And Plaintiff's freedom of movement was limited even after he left the lobby; he told the desk sergeant that he was going to get bail money because he expected to be picked up by the Trumbull police.

- The confinement was not brief.  Plaintiff was taken from his car and brought into the Trumbull Police Station, where he remained for approximately two hours.

- Plaintiff was treated as if he was going to be handcuffed, indeed, one of the officers started to cuff Plaintiff.

-11-

- The stop was not part of an investigation.  The only question asked Plaintiff was whether he would turn over his state pistol permit.

Whether Plaintiff was truly arrested within the meaning of the Fourth Amendment is an issue of fact which should be decided by a jury.

> **2.  Defendants Bernaud, Paoletti and Lively Did Not Have Probable Cause to Arrest Plaintiff Without a Warrant**

Defendants say that they had probable cause to arrest Plaintiff without a warrant for three separate offenses.  The first was interfering with an officer, in violation of Conn. Gen. Stat. Sec. 53a-167a.[1]  The second was providing security services without a license, in violation of Conn. Gen. Stat. Sec. 29-153.[2]  The

---

[1]  Sec. 53a-167a
(a) A person is guilty of interfering with an officer when such person obstructs, resists, hinders or endangers any peace officer or firefighter in the performance of such peace officer's or firefighter's duties.
(b) Interfering with an officer is a class A misdemeanor.

[2]  Sec. 29-153
No person shall engage in the business of, or solicit business as a private detective or investigator or as a watchman, guard or patrol service or represent himself
                                        (continued...)

third offense was false statement in the second degree, in violation of Conn. Gen. Stat. Sec. 53a-157b.[3]

Defendants did not have probable cause to arrest Plaintiff without a warrant on any of these theories because they did not see Plaintiff perform the allegedly criminal acts or receive speedy information of them.

The validity of a warrantless arrest is determined by state law.  See United States v. Fisher, 702 F.2d 372, 375 n.6 (2d Cir.

---

[2] (...continued)
to be, hold himself out as or advertise as a private detective or investigator or as furnishing detective or investigating services or as a watchman, guard or patrol service without first obtaining a license from the Commissioner of Public Safety.

No penalty is specified for violation of this statute.  It appears to be an infraction.

[3] 53a-157b
(a) A person is guilty of false statement in the second degree when he intentionally makes a false written statement under oath or pursuant to a form bearing notice, authorized by law, to the effect that false statements made therein are punishable, which he does not believe to be true and which statement is intended to mislead a public servant in the performance of his official function.
(b) False statement in the second degree is a class A misdemeanor.

1983); Lukos v. Bettencourt, 23 F.Supp.2d 175, 177 (D. Conn. 1998).

Connecticut General Statutes Sec. 54-1f(a) provides that police may "arrest, without previous complaint and warrant, any person for any offense in their jurisdiction, when the person is taken or apprehended in the act or on speedy information of others." See State v. Kuskowski, 200 Conn. 82, 86, 510 A.2d 172 (1986). The "speedy information" clause has been interpreted to require the arresting officer to believe that he has received speedy information of the commission of an offense in order to make an arrest without a warrant. Beinhorn v. Saraceno, 23 Conn. App. 487, 492, 582 A.2d 208 (1990). Speedy information is information less than a few hours old. See Champagne v. Gintick, 871 F.Supp. 1527, 1536 (D. Conn. 1994).

Plaintiff did not interfere with officers Bernaud, Paoletti and Lively. Defendants say that Plaintiff's refusal to turn over his state pistol permit was "interfering." (Def. SJ Mem. at 14-16). But refusal to surrender the State permit to Defendants would only have been interfering if Defendants had a right to that permit. They did not. Defendants had a right to the local permit, which Plaintiff did turn over. "Any local permit for the carrying

-14-

of a pistol or revolver ... may be revoked by the authority issuing the same ... . Upon the revocation of any local permit, the person whose local permit is revoked shall be notified in writing and such permit shall be forthwith delivered to the authority issuing the same." Conn. Gen. Stat. Sec. 29-32(c). Defendants did not have a right to the state permit. It had not been revoked and Defendant Lively did not have the power to revoke it. That power rested with the State Commissioner of Public Safety. Furthermore the state permit, if revoked, would have been surrendered to the Commissioner, not to the Trumbull Police Department. Section 29-32 of the General Statutes, subpart (b), provides: "Any state permit ... for the carrying of any pistol or revolver may be revoked by the Commissioner of Public Safety ... . Upon the revocation of any state permit ... , the person whose state permit ... is revoked shall be notified in writing and such state permit shall be forthwith delivered to the commissioner."

Nor did Defendants catch Plaintiff in the act of providing security services without a license. (Def. SJ Mem. at 16-18). Plaintiff was not acting as a bodyguard or night watchman. Plaintiff was a visitation supervisor in family cases.

-15-

Some background is necessary here.  Many family cases involve children who have yet to reach the age of majority.  The parent who has custody of the children is called the custodial parent.  The parent who does not have custody is called the noncustodial parent.  In almost every case the noncustodial parent has some contact with the children.  That contact is called visitation. (Pl. Aff. Para. 11; DeSanty Aff. Para. 3).

Sometimes a noncustodial parent poses a threat to the child.  Some parents hate each other so much that they cannot perform the simplest act, such as exchanging children, without a screaming fight.  Some individuals physically attack their children.  Some children are unusually vulnerable because they have been abused.  Some individuals entitled to visitation may not have been proved to have injured their own children, but are criminals with a history of violence towards others.  A parent may be so mentally ill that he or she cannot have custody of the children, but not so deranged that all visitation is prohibited.  And a parent with no history of crime or child abuse may nevertheless require supervised visitation because he or she has threatened to harm or kidnap the children.  In those cases visitation supervised by a neutral observer is

-16-

ordered to protect the child.  (Pl. Aff. Para. 11; DeSanty Aff. Para. 6).

Supervising visitation means more than guaranteeing physical safety.  The supervisor is responsible to a degree for the psychological well being of the children during visits.  Visitation supervisors often report to the Family Relations Office of the Superior Court and to the childrens' therapists in addition to reporting to lawyers and parents. (Pl. Aff. Para. 12; DeSanty Aff. Para. 5).

A visitation supervisor meets with the parties and goes over the court's orders to make sure that they are fully understood. The supervisor discusses the parties' plans for visitation to make sure that the court's orders will be obeyed.  A visitation supervisor writes a report if necessary and is available to testify in court about the visitation. (Pl. Aff. Para. 13; DeSanty Aff. Para. 6).

The Connecticut General Assembly has recognized the importance of supervised visitation.  In 1997 the General Assembly, in an act later codified as Conn. Gen. Stat. Sec. 17a-1011, directed the

Department of Social Services to take steps to enhance visitation opportunities.

Plaintiff is an experienced visitation supervisor. He has been appointed by the Superior Court to supervise visitation in dozens of cases. Plaintiff has been recognized by the Superior Court as an expert in visitation. (Pl. Aff. Para. 14; DeSanty Aff. Para. 7; see Transcript Excerpt, Ex. 1).

Defendants may have believed that visitation supervision was a kind of security service and therefore that visitation supervisors should be licensed under Conn. Gen. Stat. Sec. 29-153, but this belief was not sufficient to justify immediate arrest without a warrant.

Finally, Defendants were not entitled to arrest Plaintiff without a warrant for making one or more false statements on his pistol permit application. Records submitted by Defendants show that there was a criminal investigation of Plaintiff underway by the end of June and early July, 2001. (See Acting Chief Lively's letter to Det. Ronald Levesque, Conn. State Police, dated June 27, 2001, describing investigation into N. Sarno and Nicholas-James Company, LLC, Def. Ex. B-12; Agent's Investigation Report, Def's

-18-

Ex. B-4, noting criminal investigation by Paoletti as of July 2 2001).  Plaintiff should not have been arrested without a warrant.

Since Defendant could not legally have been arrested without a warrant under Connecticut state law, Defendants did not have probable cause to arrest him without a warrant.

### 3.    Defendants Bernaud, Paoletti and Lively Are Not Entitled to Qualified Immunity

Defendants Bernaud, Paoletti and Lively allege that they are protected by the qualified immunity defense even if, as Plaintiff says, they did not have probable cause to arrest him.

In Saucier v. Katz, 533 U.S. 194, 150 L. Ed. 2d 272, 121 S. Ct. 2151 (2001), the Supreme Court developed a two-part inquiry to evaluate qualified immunity claims in civil rights actions.  The initial inquiry in the Saucier analysis is whether the facts, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right.  Saucier, 533 U.S. at 201.  Reasonable mistakes of fact as to the necessity of the officers' actions are considered at this point in the analysis.  Stephenson v. Doe, 332 F.3d 68, 77-78 (2d Cir. 2003).  If no constitutional right is violated, then there is "no necessity

for further inquiries concerning qualified immunity" and the defendants are granted qualified immunity. <u>Saucier</u>, 533 U.S. at 201.

If a constitutional violation is shown, then the Court must look to the second prong of a qualified immunity analysis and "ask whether the right was clearly established." <u>Id.</u> In deciding if a right is clearly established, the pertinent inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Id.</u> 533 U.S. at 202. In order for a reasonable officer to recognize his conduct as unlawful, the law needs to first put him on notice that this particular conduct is unlawful. <u>Id.</u>

This second part to the <u>Saucier</u> analysis recognizes "that reasonable mistakes can be made as to the legal constraints on particular police conduct." <u>Id.</u> at 205. If a constitutional violation is shown, then the Court must look to the second prong of a qualified immunity analysis and "ask whether the right was clearly established." <u>Id.</u> In deciding if a right is clearly established, the pertinent inquiry is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation

he confronted." Id., 533 U.S. at 202.  In order for a reasonable officer to recognize his conduct as unlawful, the law needs to first put him on notice that this particular conduct is unlawful. Id.  This second part to the Saucier analysis recognizes "that reasonable mistakes can be made as to the legal constraints on particular police conduct." Id. at 205.

The facts of this case, taken in the light most favorable to Plaintiff, show that the conduct of Defendants Lively, Paoletti and Bernaud violated Plaintiff's Fourth Amendment rights.  The Defendants may strongly disagree with Plaintiff's version of the fact but Plaintiff's version is the one used at this stage of the analysis.  The first prong of Saucier is therefore satisfied.

The court can, and should, find that Plaintiff's Fourth Amendment rights were clearly established.  It would have been clear to a reasonable officer that under all the circumstances Plaintiff should not have been arrested.  The laws on pistol permit revocation are very plain.  Chiefs of police like Defendant Lively deal with them on a regular basis.  Documents submitted to the court by Defendants show that Defendants Lively, Paoletti and Bernaud had been engaged in a criminal investigation centering on

-21-

Plaintiff's pistol permit application for at least five weeks before the arrest. Plaintiff was not engaged in illegal acts and Defendants did not arrest on speedy information of illegal acts. We are not dealing with reasonable mistakes but rather with deliberate violations of constitutional rights. Defendants failure to continue with the arrest, leaving Plaintiff in the lobby for an hour and a half, is alone enough to create a reasonable issue of fact on that subject.

## IV.  CONCLUSION

For all of the foregoing reasons the motion of Defendants Lively, Bernaud and Paoletti for summary judgment on Count One should be denied.

THE PLAINTIFF
NICHOLAS SICINOLFI


BY:_____
    WILLIAM B. BARNES, ESQ.
        (CT0268)
    Rosenstein & Barnes
    1100 Kings Hwy. East
    P.O. Box 687
    Fairfield, CT 06432
    Tel (203) 367-7922
    Fax (203) 367-8110
    E-mail wbarnes@rosenbar.com

-22-

## **CERTIFICATION**

A copy of the foregoing was faxed and mailed postage pre-paid, first class mail, on Jan. _____, 2005, to the following persons at the addresses stated:

Louis N. George, Esq.
Raymond M. Hassett, Esq.
Michelle D. Killion, Esq.
Hassett & George, P.C.
555 Franklin Ave.,
Hartford, CT 06114

_____
WILLIAM B. BARNES, ESQ.