UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS SICINOLFI and | : | CIVIL ACTION NO. |
| THE NICHOLAS-JAMES COMPANY, LLC, | : | 303 CV 929 (AWT) |
| *Plaintiffs*, | : | |
| | : | |
| v. | : | |
| | : | |
| TOWN OF TRUMBULL, | : | |
| MARLIN LIVELY, | : | |
| ANNE MOORE, | : | |
| RICHARD BERNARD and | : | |
| CHRISTOPHER PAOLETTI, | : | |
| *Defendants*. | : | Jan. ___ , 2005 |

**LOCAL RULE 56(A)2 STATEMENT**

I.   RESPONSE TO DEFENDANT'S ALLEGATIONS

    1.   Admitted.

    2.   Admitted.

    3.   Admitted.

    4.   Admitted.

    5.   Admitted.

    6.   Admitted.

    7.   Admitted.

    8.   Admitted.

    9.   Admitted.

10.    Denied.  The checkbook Plaintiff maintained showed the payments. (Pl. Dep. Tr. page 38, lines 15-17).

11.    Admitted.

12.    Denied.  Plaintiff said that he would have to look at the pistol permit application to answer questions about the time he applied for his pistol permit. (Pl. Dep. Tr. page 103, lines 15-25).

13.    Admitted.

14.    Admitted.

15.    Denied.  Plaintiff had experience with pistols at Carson Long, the private school he attended before going into the military service. (Pl. Dep. Tr. pages 107, lines 23-25; page 108, lines 4-25).

16.    Admitted.

17.    Admitted.

18.    Admitted.

19.    Admitted.

20.    Admitted.

21.    Admitted.

22.    Denied.  Defendant Lively accused Plaintiff of lying on his application.   Plaintiff asked Defendant Lively if he was reviewing all of Det. DeSanty's pistol permit applications, or just Plaintiff's application.   Defendant Lively did not answer. Plaintiff said "So I thought." (Pl. Dep. Tr. page 130, lines 9-17, lines 21-24).

23.    Admitted that Defendant Lively contacted the Connecticut State Police.  The letters, Exs. B-12 & B-14, speak for themselves.

24.    Denied.   Defendant Lively was informed that the activities described to the Connecticut State Police by Defendant Lively violated Connecticut State law.  See Ex. B-13.

25.    Admitted.

26.    Admit that Defendant Lively claims to have been prompted by such motivation.

27.    Admitted.

28.    Admitted that the incident was directly related to the revocation of Plaintiff's local permit.  The incident was not, and could not have been, directly related to revocation and surrender of Plaintiff's state permit because Defendant Lively had no power to revoke Plaintiff's state permit and the state permit was by law

-3-

to be surrendered to the Commissioner of Public Safety following written notice of revocation from the Commissioner.

29.   Admitted.

30.   Admitted.

31.   Plaintiff lacks knowledge to admit or deny this allegation.

32.   Plaintiff lacks knowledge to admit or deny this allegation.

33.   Plaintiff lacks knowledge to admit or deny this allegation.

II. ISSUES OF FACT TO BE TRIED

1.   On Aug. 3, 2001, Plaintiff was sitting in his car in the parking lot (Pl. Dep. Tr. page 139, lines 6-8) of the Trumbull police station. (Pl. Dep. Tr. 130, line 25, 131, lines 1-5).

2.   Plaintiff was waiting for supervised visitation clients to arrive and exchange children. (Pl. Aff. Para. 3).

3.   Plaintiff looked up and saw three police officers approaching his car with their hands on their weapons. (Pl. Dep. Tr. page 131, lines 7-10).   Plaintiff knew two of them to be

Defendants Bernaud and Paoletta. (Pl. Dep. Tr. page 131, lines 11-12).

4.    The three officers surrounded Plaintiff's car. Defendant Bernaud was on one side. Defendant Paoletti was on the other side and the third officer was in front of the car. (Pl. Dep. Tr. page 138, lines 20-25). Plaintiff's freedom of movement was limited by Defendants Bernaud and Paoletti and by the third officer. Plaintiff could not drive away. (Pl. Aff. Para. 3).

5.    Plaintiff saw Defendant Lively, Acting Chief of the Trumbull Police Department, standing in a window on the second floor of the station. (Pl. Dep. Tr. page 183, lines 17-25, page 184, lines 1-8). That window overlooks the entrance and the stairs and part of the parking lot. (Pl. Dep. Tr. page 184, lines 9-12). Defendant Lively could see what was happening. (Pl. Aff. Para. 6).

6.    Defendant Paoletti handed Plaintiff a letter from Defendant Lively to Plaintiff. Plaintiff opened and read the letter. In the letter Defendant Lively revoked Plaintiff's Town pistol permit. Plaintiff immediately surrendered his town pistol permit to Defendant Bernaud. (Pl. Dep. Tr. page 133, lines 9-13; Pl. Aff. Para. 4).

7.     Defendants Paoletti and Bernaud asked Plaintiff to surrender his State pistol permit to them.  Plaintiff refused because Connecticut state law provides that a State pistol permit is revoked by the Department of Public Safety.  The permit holder must surrender the state permit to the Department of Public Safety.  Notwithstanding, Defendants Bernaud and Paoletti demanded the State permit.  Plaintiff refused their demand.  Defendant Bernaud told Plaintiff that he was under arrest for refusing to surrender the State permit. (Pl. Aff. Para. 5).

8.  Plaintiff was sitting in his car when Defendant Bernaud told him that he was under arrest (Pl. Dep. Tr. 138, lines 2-6).

9.  Plaintiff was escorted into the police station by the officers.  Defendant Bernaud told Plaintiff that he was under arrest in the station house. (Pl. Dep Tr. page 138, lines 7-10).

10.  Defendant Paoletti also told Plaintiff that he was under arrest in the station house. (Pl. Dep. Tr. page 138, lines 14-19).

11.  Defendant Paoletta took his handcuffs out.  Plaintiff prepared to be cuffed by taking his watch off (so it wouldn't be crushed) and putting his hands behind his back. (Pl. Dep. Tr. page 138, lines 14-19; Pl. Aff. Para. 8). At this point Defendant

-6-

Bernaud stopped handcuffing Plaintiff. (Pl. Dep. Tr. page 185, lines 15-19). Instead he ordered Plaintiff to wait inside the lobby of the station. (Pl. Dep. Tr. 134, lines 9-14; Pl. Aff. 8).

12. While Plaintiff was in the lobby Defendant Bernaud again told the Plaintiff that he was under arrest. (Pl. Dep. Tr. page 138, lines 11-13; page 185, lines 17-19).

13. During this period Defendants Paoletti and Bernaud again demanded that Plaintiff give them his state permit. (Pl. Dep. Tr. 134, lines 15-17).

14. Plaintiff remained in the lobby as he had been directed by Defendant Bernaud. (Pl. Dep. Tr. 135, lines 5-17) for about an hour and a half more. (Pl. Dep. Tr. page 147, lines 24). During that time neither the Defendants nor any other member of the Trumbull police department took any other steps to complete the formalities of Plaintiff's arrest, to talk to him, or to instruct him further regarding his submission to their authority. (Pl. Aff. Para. 9). Nor did it appear to the Plaintiff that the Defendants intended to complete the formalities of his arrest that afternoon. (Pl. Aff. Para. 9).

-7-

15.   The Plaintiff informed the officer at the desk that he intended to leave to arrange bail. (Pl. Dep. Tr. page 135, lines 17-20; Pl. Aff. Para. 9).   Plaintiff got in his car and left. Plaintiff in fact took steps to arrange sufficient bail.  (Pl. Dep. Tr. page 135, lines 17-25, page 136, lines 1-2; Pl. Aff. Para. 9).

16.   The Trumbull police officers took no further steps to consummate a formal arrest of the Plaintiff. (Pl. Dep. Tr. 137, lines 10-13; Pl. Aff. Para. 9).

17.   Plaintiff did not consent to the arrest. (Pl. Aff. Para. 10).

18.   Many family cases involve children who have yet to reach the age of majority.  The parent who has custody of the children is called the custodial parent.  The parent who does not have custody is called the noncustodial parent.  In almost every case the noncustodial parent has some contact with the children.  That contact is called visitation. (Pl. Aff. Para. 11; DeSanty Aff. Para. 4).

19.   Sometimes a noncustodial parent poses a threat to the child.  Some parents hate each other so much that they cannot perform the simplest act, such as exchanging children, without a

screaming fight.  Some individuals physically attack their children.  Some children are unusually vulnerable because they have been abused.  Some individuals entitled to visitation may not have been proved to have injured their own children, but are criminals with a history of violence towards others.  A parent may be so mentally ill that he or she cannot have custody of the children, but not so deranged that all visitation is prohibited.  And a parent with no history of crime or child abuse may nevertheless require supervised visitation  because he or she has threatened to harm or kidnap the children.  In those cases visitation supervised by a neutral observer is ordered to protect the child.  (Pl. Aff. Para. 11; DeSanty Aff. Para. 5).

20.    Supervising visitation means more than guaranteeing physical safety.  The supervisor is responsible to a degree for the psychological well being of the children during visits.  Visitation supervisors often report to the Family Relations Office of the Superior Court and to the childrens' therapists in addition to reporting to lawyers and parents. (Pl. Aff. Para. 12; DeSanty Aff. Para. 6).

21.   A visitation supervisor meets with the parties and goes over the court's orders to make sure that they are fully understood.  The supervisor discusses the parties' plans for visitation to make sure that the court's orders will be obeyed.  A visitation supervisor writes a report if necessary and is available to testify in court about the visitation. (Pl. Aff. Para. 13; DeSanty Aff. Para. 7).

22.   The Connecticut General Assembly has recognized the importance of supervised visitation.  In 1997 the General Assembly, in an act later codified as Conn. Gen. Stat. Sec. 17a-1011, directed the Department of Social Services to take steps to enhance visitation opportunities.

23.   Plaintiff is an experienced visitation supervisor.  He has been appointed by the Superior Court to supervise visitation in dozens of cases.  Plaintiff has been recognized by the Superior Court as an expert in visitation. (Pl. Aff. Para. 14; DeSanty Aff. Para. 8; see Transcript Excerpt, Ex. 1).

24.   There was a criminal investigation of Plaintiff underway by the end of June and early July, 2001. (See Acting Chief Lively's letter to Det. Ronald Levesque, Conn. State Police, dated June 27,

2001, describing investigation into N. Sarno and Nicholas-James Company, LLC, Def. Ex. B-12; Agent's Investigation Report, Def's Ex. B-4, noting criminal investigation by Paoletti as of July 2 2001).

THE PLAINTIFF
NICHOLAS SICINOLFI


BY: _____
    WILLIAM B. BARNES, ESQ.
        (CT0268)
    Rosenstein & Barnes
    1100 Kings Hwy. East
    P.O. Box 687
    Fairfield, CT 06432
    Tel (203) 367-7922
    Fax (203) 367-8110
    E-mail wbarnes@rosenbar.com

**CERTIFICATION**

A copy of the foregoing was faxed and mailed postage pre-paid, first class mail, on Jan. _____, 2005, to the following persons at the addresses stated:

Louis N. George, Esq.
Raymond M. Hassett, Esq.
Michelle D. Killion, Esq.
Hassett & George, P.C.
555 Franklin Ave.,
Hartford, CT 06114


_____
WILLIAM B. BARNES, ESQ.

-11-