UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Hartford)

```
*************************************
                              *
NICHOLAS SICONOLFI,           *
                              *
      V.                      *           CIVIL ACTION NO.
                              *           3:03 CV 929 (AWT)
                              *
RICHARD BERNAUD,              *
CHRISTOPHER PAOLETTI          *
                              *           July 5, 2006
*************************************
```

## JOINT TRIAL MEMORANDUM

### I.    TRIAL COUNSEL

**For Plaintiff:**
Atty. Erskine D. McIntosh
3129 Whitney Avenue
2nd floor
Hamden, CT 06518
Phone: (203) 787-9994
Fax: (203) 848-1213

**For Defendant:**
Atty. Louis N. George
945 Hopmeadow Street
Simsbury, CT 06070
Phone: (860) 651-1333
Fax: (860) 651-1888
E-mail: lgeorge@hgesq.com


Atty. Stuart E. Brown
945 Hopmeadow Street
Simsbury, CT 06070
Phone: (860) 651-1333
Fax: (860) 651-1888
E-mail: sbrown@hgesq.com

## II.    JURISDICTION

This action arises under the Fourth Amendment of the United States Constitution and 42 U.S.C. § 1983.  Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 this being an action seeking redress for violations of the Plaintiff's civil and constitutional rights.

## III.    JURY TRIAL

This case is to be tried to a jury.

## IV.    NATURE OF CASE

The Plaintiff alleges that the Defendants violated his Fourth Amendment right under the United States Constitution to be free from false arrest.  The Plaintiff alleges that on August 2, 2001 the Defendants falsely arrested the Plaintiff outside the Trumbull Police Department.  The Defendants, in their police uniforms, ordered the Plaintiff out of his car and into the police department.  During this time, one or more of the Defendants told the Plaintiff he was under arrest, and threaten to handcuff the Plaintiff.  The Plaintiff believed he was under arrest by the Defendants.   The Plaintiff seeks compensatory and punitive damages against the Defendants for the violation of his Fourth Amendment Constitutional right to free from false arrest.

## V.    STIPULATIONS OF FACT AND LAW

1. The Defendants were employed as police officers for the Town of Trumbull, Connecticut at the time of the alleged incident.

## VI.    PLAINTIFF'S CONTENTIONS

The Defendant, Christopher Paoletti, was involved in an investigation of the Plaintiff, Nicholas Sicinolfi, and his business partner, James DeSanty. Defendant Paoletti harbored disdain for Mr. Sicinolfi and his business partner, Mr. DeSanty. Defendant Paoletti knew that Mr. Sicinolfi was engaged in a business that provided supervision for court ordered child visitations.

On August 2, 2001, Mr. Siconolfi was in the parking lot of the Trumbull Police Department for a scheduled supervision of a court order visitation. During this time, Defendant Police Officers, Richard Bernaud and Christopher Paoletti, were ordered by Chief Lively to seize Mr. Sicinolfi's Town of Trumbull pistol permit. The Defendants approached Mr. Sicinolfi's car in full police uniform. Upon the Defendants request, Mr. Sicinolfi turned over his Town of Trumbull pistol permit.

In violation of state law, the Defendants then requested that Mr. Sicinolfi turn over his State of Connecticut pistol permit to the them. Mr. Sicinolfi refused to turn over the state permit because to do so would have been inconsistent with state law. The Defendants ordered Mr. Sicinolfi out of his car and he complied. One or more of the Defendants told Mr. Sicinolfi he was under arrest for failing to turn over his state pistol permit. One or more of the Defendants threatened to handcuff Mr. Sicinolfi and showed him a pair of handcuffs. The Defendants then ordered Mr. Sicinolfi to follow them into the Trumbull Police Department where he was placed in a room and told to wait for the Defendants to return. As a result of this detention, Mr. Sicinolfi believed he was being placed under arrest by the Defendants for refusing to turn over his state pistol permit.

As a result of this unlawful detention and false arrest Mr. Sicinolfi suffered a violation of his 4th Amendment right to be free from arrest without probable cause, and emotional and psychological injury. Further, said public misconduct caused injury to Mr. Sicinolfi's good name and good business reputation.

## VII.   DEFENDANTS' CONTENTIONS

The Defendants, Richard Bernaud and Christopher Paoletti, state that they were both members of the Police Department of the Town of Trumbull in the year 2001. Mr. Paoletti was involved in the investigation of the Plaintiff, Nicholas Siconolfi, who had obtained a pistol permit from the Town of Trumbull. Based upon problems with the Plaintiff's pistol permit application disclosed by the investigation, Police Chief M. James Lively determined that Siconolfi's pistol permit should be revoked.

On or about August 2, 2001, the Plaintiff was in the parking lot of the Trumbull Police Department. Police Chief Lively instructed Mr. Paoletti to inform Siconolfi that his pistol permit was revoked and to determine the reason for Siconolfi's presence in the Police Department's parking lot. Mr. Paoletti requested that two other police officers assist him at that time: Defendant Richard Bernaud and a third party, James Leos.

The Defendants assert that the Plaintiff was informed that his pistol permit was being revoked. The Plaintiff was never placed under arrest, nor was he confined in any way.

## VIII.  LEGAL ISSUES

1.  Whether the Defendants violated the Plaintiff's right to free from false arrest under the Fourth Amendment of the United States Constitution.

## IX.    VOIR DIRE QUESTIONS

See Appendix.

## X.    LIST OF WITNESSES

### A. Witnesses for the Plaintiff:

1. Nicholas Sicinolfi (Plaintiff), 4 Daniels Farm Road, Unit 233, Trumbull, CT 06611.

   i.    Anticipated Testimony:  Nicholas Sicinolfi will testify to the circumstances surrounding his false arrest by the Defendants on August 2, 2001 outside the Trumbull Police Department by the Defendants.  Mr. Sicinolfi will testify to the Defendants conduct towards him on August 2, 2001 and that said conduct made him believe he was being placed under arrest by the Defendants.

   ii.    Duration of Testimony: five (5) hours.

   iii.    Nicholas Sicinolfi is likely to testify.

2. James DeSanty (fact witness), 62 Pachaug Trail, Monroe, CT 06468.

   i.    Anticipated Testimony: James DeSanty will testify as to Defendant Paoletti's investigation into the Plaintiff's and his business and Defendant Paoletti's and the Trumbull Police Department's ill-will towards the Plaintiff.

   ii.    Duration of Testimony: Two (2) hours.

   iii.    James DeSanty is likely to testify.

3. Kevin Hammil (fact witness), 158 Edison Road, Trumbull, CT 06611.

    i.    Anticipated Testimony: Kevin Hammil will testify to the circumstances surrounding the revocation of the Plaintiff's pistol permit.

    ii.    Duration of Testimony: One (1) hour.

    iii.    Kevin Hammil is likely to testify.

4. Mike Harry (fact witness), 158 Edison Road, Trumbull, CT 06611.

    i.    Anticipated Testimony: Mike Harry will testify as to the animosity between Defendant Paoletti and the Plaintiff and to the portion of August 2, 2001 false arrest of the Plaintiff that he witnessed.

    ii.    Duration of testimony: Two (2) hours.

    iii.    Mike Harry is likely to testify.

5. James Arillo (fact witness), 158 Edison Road, Trumbull, CT 06611.

    i.    Anticipated Testimony: James Arillo will testify to the atmosphere at the within the Trumbull Police Department at the time the Plaintiff was falsely arrested and as to the Defendants motivation in investigating the Plaintiff

    ii.    Duration of Testimony: One (1) hour.

    iii.    James Arillo is likely to testify.

6. Former Chief Barry (fact witness),

    i.     Anticipated Testimony:  Chief Barry will testify to the circumstances surrounding the revocation of the Plaintiff's gun permit.

    ii.    Duration of Testimony: One (1) hour.

    iii.   Chief Barry is likely to testify.

7.  Theodore Ambrosini (fact witness), 13 McArthur Road, Trumbull, CT 06611.

    i.     Anticipated Testimony:  Theodore Ambrosini will testify to the issuing of the Plaintiff's pistol permit with the Town of Trumbull

    ii.    Duration of Testimony: One (1) hour.

    iii.   It is likely that Theodore Ambrosini will testify.

8.  Thomas Kiley (fact witness), 158 Edison Road, Trumbull, CT 06611.

    i.     Anticipated Testimony: Thomas Kiley will testify to the atmosphere in the Trumbull Police Department at the time the Plaintiff was falsely arrested.

    ii.    Duration of Testimony: One (1) hour.

    iii.   Thomas Kiley is unlikely to testify.

9.  Clemente Alvear (fact witness), 20 Wintergreen Lane, Shelton, CT 06484.

    i.     Anticipated Testimony: Clemente Alvear was the Plaintiff's visitation clients on August 2, 2001 and will testify as to the events of August 2, 2001.

    ii.    Duration of Testimony: One (1) hour.

    iii.   Clemente Alvear is likely to testify.

10. Jeanine Alvear (fact witness), 20 Wintergreen Lane, Shelton, CT 06484.

    i.    Anticipated Testimony: Jeanine Alvear was the Plaintiff's visitation clients on August 2, 2001 and will testify as to the events of August 2, 2001.

    ii.    Duration of Testimony: One (1) hour.

    iii.    Jeanine Alvear is likely to testify.

11. Albert Edgeworth (fact witness), 116 Howard Avenue, 2nd Floor, Ansonia, CT 06401.

    i.    Anticipated Testimony: Albert Edgeworth is a former vistitation client of the Plaintiff's and will testify as to being questions by Defendant Bernaud about the Plaintiff.

    ii.    Duration of Testimony: One (1) hour.

    iii.    Albert Edgeworth is likely to testify.

12. Ellin Yassky (character witness), 39 Woodbine Lane, Fairfield, CT 06825.

    i.    Anticipated Testimony: Ellen Yassky will testify as to the Plaintiff's character and professionalism in the field of supervised visitations.

    ii.    Duration of Testimony: One (1) hour.

    iii.    Ellen Yassky is unlikely to testify.

13. Dennis Hamilton (character witness), 281 St John Street, New Haven, CT 06511.

    i.    Anticipated Testimony: Dennis Hamilton will testify as to the Plaintiff's character and professionalism in the field of supervised visitations.

  ii. Duration of Testimony: One (1) hour.

  iii. Dennis Hamilton is unlikely to testify.

14. Noel Misthopoulos (character witness), 5 Shields Lane, Darien, CT 06820.

  i. Anticipated Testimony: Noel Misthopoulos is a former visitation client of the Plaintiff's and will testify to the Plaintiff's professionalism.

  ii. Duration of Testimony: One (1) hour.

  iii. Noel Misthopoulos is unlikely to testify.

The Plaintiff reserves the right to call additional witnesses for rebuttal in response to evidence submitted by the Defendants not reasonably anticipated prior to the beginning of the trial.

The Defendants object to the following Plaintiff's witnesses inasmuch as they are admitted not to have been present at the time of the purported "false arrest" and were not disclosed by the Plaintiff as witnesses in the course of discovery:  James DeSanty, Kevin Hammil, James Arillo, Former Chief Barry, Theodore Ambrosini, Thomas Kiley, Albert Edgeworth, Ellin Yassky, Dennis Hamilton, and Noel Mistploias.

**B** **Witnesses For Defendants:**

- Richard Bernaud (Defendant)

  i. Anticipated testimony:  Richard Bernaud will provide testimony concerning the investigation into the Plaintiff's conduct, including the Plaintiff's presence in the parking lot of the Trumbull Police

Department on August 2, 2001. Richard Bernaud will testify that the Plaintiff was never arrested by him.

    ii. Duration of testimony: (4) hours

    iii. Sgt. Bernaud is <u>likely to testify</u>

- Christopher Paoletti (Defendant)

    i. Anticipated testimony: Christopher Paoletti will provide testimony concerning the investigation into the Plaintiff's conduct, including the Plaintiff's application for a pistol permit and the Plaintiff's presence in the parking lot of the Trumbull Police Department on August 2, 2001. Christopher Paoletti will testify that the Plaintiff was never arrested by him.

    ii. Duration of testimony: four (4) hours.

    iii. Mr. Paoletti is <u>likely to testify.</u>

- M. James Lively (fact witness)

    i. Anticipated testimony: M. James Lively will testify as to the investigation into the Plaintiff's conduct, including the Plaintiff's application for a pistol permit, the Plaintiff's provision of "supervised visitation services," and the Plaintiff's presence in the parking lot of the Trumbull Police Department on August 2, 2001. M. James Lively will testify that the Plaintiff was not arrested on August 2, 2001.

    ii. Duration of testimony: four (4) hours.

    iii. Mr. Lively is <u>likely to testify.</u>

- James Leos (fact witness)

    i.  Anticipated testimony: James Leos will provide testimony concerning the investigation into the Plaintiff's conduct, including the Plaintiff's presence in the parking lot of the Trumbull Police Department on August 2, 2001. Officer Leos will testify that the Plaintiff was never arrested by him nor by either of the Defendants.

    ii.  Duration of testimony: two (2) hours

    iii.  James Leos is <u>not likely to testify</u>

The Defendant reserves the right to call additional witnesses for rebuttal in response to evidence submitted by the Plaintiff not reasonably anticipated prior to the beginning of the trial.

## XI.   EXHIBITS

### A.   <u>Plaintiff's Exhibits:</u>

1. Trumbull Police Department Case/Incident Report, August 2, 2001 – documents Defendant Paoletti's report of the incident with Mr. Sicinolfi on August 2, 2001.

2. Subpoena Duces Tecum for Christopher Paoletti to appear at the Connecticut Board of Firearms Examiners review of Mr. Sicinolfi's appeal of the revocation of his pistol permit.

3. Letter dated August 1, 2001 from Defendant Paoletti to Michael D. Conner of the Department of the Army regarding Mr. Sicinolfi's military background.

4. Agent's Investigation Report regarding Defendant Paoletti investigation into Mr. Sicinolfi's military background.

5. Letter dated April 30, 2001 from Mr. Sicinolfi to the Trumbull Police Department regarding the nature of his business.

6.  September 25, 2002 Notice Letter regarding Mr. Sicinolfi's appeal of his pistol permit revocation.

7.  Mr. Sicinolfi's military discharge papers.

8.  August 7, 2001 revocation notice of Mr. Sicinolfi's State pistol permit from the Department of Public Safety to Chief Lively.

9.   August 7, 2001 revocation notice of Mr. Sicinolfi's State pistol permit from the Department of Public Safety to Mr. Sicinolfi.

10. Trumbull Police Department Pistol Permit Background Investigation for Mr. Sicinolfi, April 20, 1999.

11. June 27, 2001 Trumbull Police Department Letter to Detective Levesque regarding the investigation of Mr. Sicinolfi's company.

12. August 2, 2001 Letter from Chief Lively revoking Mr. Sicinolfi's pistol permit with the Town of Trumbull.

13. June 28, 2001 Letter from the Department of Public Safety to Chief Lively regarding investigation into Mr. Sicinolfi's company.

14. June 23, 2001 Complaint/Statement Sheet regarding Mr. Sicinolfi's company's services.

15. LLC charter for Mr. Sicinolfi's company.

16. Mr. Sicinolfi's Town of Trumbull pistol permit.

17. Mr. Sicinolfi's State of Connecticut pistol permit.

18. June 29, 2001 Trumbull Police Department statistical report pistol permits issued in Trumbull between 1998 and 2002.

19. Mr. Sicinolfi's appeal of pistol permit revocation.

20. May 1998 Trumbull Police Department Complaint/Statement of David Baker regarding Defendant Paoletti's investigation into Mr. Sicinolfi.

21. May 18, 2001 Correspondence from Defendant Bernaud to Chief Lively regarding May 17, 2001 DMV stop at Mr. Sicinolfi's home.

22. Transcript of Mr. Sicinolfi's October 24, 2002 appeal of pistol permit recovation before the Board Of Firearms Permit Examiners.

23. Plaintiff's IRS tax filing for the years 1999 to 2005.

**B.**    **Defendants' Exhibits:**

1.   Application for Permit to Carry Pistols and Revolvers, by Nicholas Joseph Siconolfi to Town of Trumbull

2.   Character Reference Affidavit for Nicholas Siconolfi by Maria Pilarinos

3.   August 1, 2001 letter to Chris Paoletti from Michael D. Donner with Agent's Investigation Report attached

4.   Trumbull Police Department Pistol Permit Background Investigation for applicant Nicholas J. Siconolfi

5.   Trumbull Police Department, Intradepartmental Memorandum, dated January 24, 2001, completed by James DeSanty

6.   Trumbull Police Department, memorandum dated April 10, 2001, from Acting Chief J. Lively to Detective J. DeSanty

7.   Trumbull Police Department, memorandum dated April 18, 2001, from Acting Chief J. Lively to Detective J. DeSanty

8.   Trumbull Police Department, memorandum dated April 20, 2001, from James DeSanty

9. Trumbull Police Department, memorandum dated April 24, 2001, from Acting Chief J. Lively to Detective J. DeSanty

10. Trumbull Police Department, memorandum dated April 30, 2001, from James DeSanty

11. June 27, 2001 letter to Detective Ronald Levesque from Acting Chief J. Lively

12. June 28, 2001 letter to Chief James Lively from Lt. Robert Kiehm

13. August 2, 2001 letter to Nicholas J. Siconolfi from Acting Chief J. Lively

14. August 6, 2001 letter from William B. Barnes to M. James Lively

## XII.  DEPOSITION TESTIMONY

The Plaintiff anticipates using the deposition testimony of Richard Bernaud and Christopher Paoletti for the purposes of impeaching the witnesses' credibility.

The Defendants anticipate using the deposition testimony of Nicholas Sicinolfi merely for purposes of impeaching the witness's credibility.

## XIII.  STATEMENT IN LIEU OF OPENING STATEMENT

See Appendix.

## XIV.  ANTICIPATED EVIDENTIARY PROBLEMS

The Defendants anticipate that the Plaintiff will attempt to raise issues irrelevant to and outside of the scope of the one remaining count of the complaint.  There were numerous allegations made in the October 16, 2003 First Amended Complaint & Jury Trial Demand which have no bearing on the issue of whether there was a false arrest of Mr. Siconolfi on August 2, 2001.

## XV.  TRIAL TIME

Counsel estimate that the presentation of evidence in this matter will require a total of five

(5) days:  Plaintiff's case requiring three (3) days of testimony and Defendants' case requiring

two (2) days.


BY: _____

        ATTY. ERSKINE D. McINTOSH
        FEDERAL BAR NO. CT 09743
        THE LAW OFFICES OF ERSKINE D. McINTOSH, PC
        3129 WHITNEY AVENUE, SECOND FLOOR
        HAMDEN, CT 06518-2364
        PH: (203) 787-9994
        FAX: (203) 848-1213

        **COUNSEL FOR THE PLAINTIFF**


BY: _____

        ATTY. STUART E. BROWN
        945 HOPMEADOW STREET
        SIMSBURY, CT 06070
        PH: (860) 651-1333- ext. 140
        FAX: (860) 651-1888

        **COUNSEL FOR THE DEFENDANTS**

# APPENDIX

## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT
#### (Hartford)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
\*
**NICHOLAS SICONOLFI,**                               \*
          \*
  **V.**                                     \*  **CIVIL ACTION NO.**
          \*  **3:03 CV 929 (AWT)**
          \*
**RICHARD BERNAUD,**                                   \*
**CHRISTOPHER PAOLETTI**                               \*
          \*  July 5, 2006
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S PROPOSED VOIR DIRE QUESTIONS

1. This is a lawsuit for civil rights violations brought by a citizen against police officers for the Town of Trumbull, Connecticut. Is there any reason why you would have difficulty being completely neutral and fair in deciding this case if you are chosen on a jury?

2. Is there anyone here who would prefer not to sit on a jury concerning a case of this kind?

3. Is there any economic, social, marital or other hardship of any kind that you feel would make it difficult for you to sit on this jury? If so, please explain.

4. Have you or anyone close to you ever been employed as a police officer or by any law enforcement agency in any capacity? If so, please explain.

5. Have you or anyone close to you worked for any federal, state or local government agency? If so, please explain.

6. Have you ever had any contact with anyone in a law enforcement agency through

1

your work, in your neighborhood, or in your social life? If so, please explain.

7.    Have you ever considered working in law enforcement? If so, please explain.

8.    Have you had any training, courses, or work experience in law enforcement, criminal justice, administration of justice, or law? If so, please explain.

9.    Have you ever served as an appointed or elected official of any state, city or local government? If so, please explain.

10.    Has anyone one here or anyone close to you ever been involved in any political campaign or elections? If so, please explain.

11.    If you are married, is your spouse connected to any police department or law enforcement agency or employed by any government agency?

12.    Have you had any personal or professional contact with the Trumbull Police Department or any member of the Trumbull Police Department? If so, please explain.

13.    Have you read or heard anything about this case, the Plaintiff, or any of the Defendants? If so, please explain.

14.    Do you know of any reason why you should not or could not sit as an impartial juror in this case?

15.    Many people feel the job police officers perform is so difficult and important that it is wrong to second-guess them by punishing them for a wrong-doing which occurs in the course of their job performance. Do you feel that way? Why is that?

16.    Some people feel that citizens who believe they have been treated unfairly and illegally should not bring suit against police officers? Does anyone feel that way?

17.    Some people feel that it is more important for a police officer to preserve law and order than to preserve a citizen's constitutional right. Do you agree that it is more important to preserve law and order than preserve constitutional rights? If so, please explain.

18.    Many people feel that a police officer's testimony should be given greater weight than the testimony of an ordinary citizen. How many of you feel that way? Why is that?

19.    Would you tend to trust or believe police officers more so than an ordinary citizen who is not a police officer? If so, please explain.

20.    This case involves a claim by Mr. Sicinolfi that the Defendant police officers, Sergeant Paoletti and Sergeant Bernaud, falsely arrested Mr. Sicinolfi by confining him and using their arrest powers to detain him inside the Trumbull Police Department without any probable cause to legally arrest Mr. Sicinolfi. Is there anything about the nature of this case that would prevent you or make it difficult for you to be a fair and impartial juror? If so, please explain.

21.    Would it be embarrassing to you or anyone close to you if you sat on the jury in this case and the jury found the Defendants liable? If so, please explain.

22.    Assuming you reach a verdict for Mr. Sicinolfi on the issue of liability, that is you find the Defendant police officers violated his constitutional rights, would you give Mr. Sicinolfi a full and fair sum of damages?

23.    After hearing the evidence and instructions of the judge, you found that one or more of the Defendant police officers had violated Mr. Sicinolfi's constitutional rights would anything cause you to hesitate or cause you to refuse to make the Defendant or Defendants pay money damages to Mr. Sicinolfi? Is so, please explain.

3

24.    Some people feel that a person should not be compensated for emotional pain and mental distress and should only be compensated for physical injuries. How many of you feel that way? Why is that?

25.    Have you or anyone close to you own a firearm? If so, please explain.

26.    Have you ever applied for a firearm permit? If so, please explain.

27.    Some people feel that owning any type of firearm is wrong and that people should not own guns. Do you agree that people should not own firearms? If so, please explain.

28.    What groups and organizations do you belong to?

29.    Have you or anyone close to you ever been arrested? If so, please explain.

30.    Have you, or anyone close to you, ever been a party to a lawsuit? If so please explain.

31.    Are you currently employed? If so, where are you employed and what is the nature of your work?

32.    Have you ever served in the military?

33.    What newspapers do you read?

34.    What magazines do you read?

35.    Do you like to watch police or law enforcement shows on television? If so, which shows?

36.    What was the last book you read?

37.    Does anyone here do any sort of outdoor recreational activities. If so, what activities?

38.    Have you ever donated any of your time or money to charity? If so, which charities?

39.     Does anyone here own their own business?  If so, what type of business?

RESPECTFULLY SUBMITTED,
THE PLAINTIFF

BY:     _____
        ATTY. ERSKINE D. McINTOSH
        FEDERAL BAR NO. CT 09743
        THE LAW OFFICES OF ERSKINE D. McINTOSH, PC
        3129 WHITNEY AVENUE, SECOND FLOOR
        HAMDEN, CT 06518-2364
        PH: (203) 787-9994
        FAX: (203) 848-1213

        **COUNSEL FOR THE PLAINTIFF**

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
(Hartford)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
                                        \*

NICHOLAS SICONOLFI,         \*
                                          \*

     V.                 \*          **CIVIL ACTION NO.**
                                    \*          **3:03 CV 929 (AWT)**
                                          \*

**RICHARD BERNAUD,**        \*
**CHRISTOPHER PAOLETTI**   \*
                                        \*          **July 5, 2006**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## PLAINTIFF'S STATEMENT IN LIEU OF AN OPENING STATEMENT

Our federal Constitution protects a citizen from a police officer using the power and authority of his or her position to illegally detain and arrest a citizen where the police officer knows the citizen has committed no crime. The Plaintiff in this case, Mr. Nicholas Sicinolfi, has come to Court because n August 2, 2001, the Defendant police officers, Sergeant Paoletti and Sergeant Bernaud, of the Trumbull Police Department, deprived Mr. Sicinolfi of his Constitutional right by illegally detaining and arresting him, even though the Defendant police officers knew Mr. Sicinolfi had committed no crime.

Before the illegal arrest on August 2, 2001, Mr. Sicinolfi was familiar with the Trumbull Police Department. He would run into and chat with officers when he stopped for coffee in Trumbull. He worked with officers with his involvement in the Trumbull DARE program. He would play in the local golf tournament with a number of Trumbull police officers. And Mr. Sicinolfi was a life-long friend with Detective James DeSanty from the Trumbull Police Department. In 1999, the two of them started a small business together, the Nicholas-James Company, LLC.

1

The Nicholas-James Company, LLC provided supervision during court ordered supervised child visitations. A court order supervised visitation is where the court requires the parents of child to meet so one of the parents can visit with the child in a neutral setting that is supervised by an entity like Mr. Sicinolfi's compnay. Generally, such visitation orders are only issued in cases where there is a strong animosity between the two parents and it is necessary for the court to set a time and neutral place for the visitation to take place. Mr. Sicinolfi is someone the court appoints to supervise such visitations. His company provides a safe and secure atmosphere for the children to visit with parents. Mr. Sicinolfi and his company were referred visitation clients by the Department of Children and Family and by attorneys that represented the families.

Before taking on a visitation client, Mr. Sicinolfi would read all the background materials on the case. He would read the court transcripts and look to see whether there was a temporary restraining order or protective order issued. He would also look to see whether there was any history of abuse or violence between the parents and child or the parents themselves.

As a court appointed supervisor of child visitations, Mr. Sicinolfi is required to be at the place the visitation is scheduled. During the visitation, Mr. Sicinolfi observes the child's interaction with the parents. He also observes the interaction between the two parents. He looks for any signs of abuse. Most importantly, he assures that no harm comes to the child and that the child is not illegally abducted by one of the parents. For instance, there was one visitation where the parent came to pick up the child and her demeanor and behavior tipped off Mr. Sicinolfi that she was under the influence. When

2

he would not allow the child to go with the parent, she tried to grab the child and get away.

Often times, Mr. Sicinolfi is called before the court, or family relations officer, and asked to give his opinion as to how a visitation he supervised went between the child and parents. Mr. Sicinolfi may give his opinion as to whether continued supervision is needed in the future or not.

Some of the visitations Mr. Sicinolfi was appointed to supervise took place in the visitor's parking lot of the Trumbull Police Department. Each time Mr. Sicinolfi had a supervised visitation at the Trumbull Police Department, he would submit a copy of the court order to the front desk. This way the Department would know what was going on and why he was there.

After starting his supervision business, Mr. Sicinolfi applied for a pistol permit with the Town of Trumbull. He filled out a Town of Trumbull pistol permit application and the required character affidavits. As part of his job with the Trumbull Police Department, Mr. DeSanty checked the information and character references on Mr. Sicinolfi's application.    After receiving a permit from the Town of Trumbull, Mr. Sicinolfi applied for a State of Connecticut pistol permit and was issued the State permit as well.

Mr. Sicinolfi applied for a pistol permit so that he was not limited in the type of cases he could take on as a court appointed supervisor. Many of the cases the court ordered for supervised visitation involved individuals with a history of violence. One case Mr. Sicinolfi worked on as a visitation supervisor involved a member of the Latin Kings street gang, who had been convicted of murder. In order to be able to assure the

3

safety of the child in all circumstances it was necessary for Mr. Sicinolfi to have a pistol permit.

During the time, Mr. Sicinolfi was getting his business going, the Trumbull Police Department went through some major internal changes. In 1999, Chief Ambrosini left the Trumbull Police Department and the Department searched for a new Chief. A rift in the Department began to form between those officers and citizens that supported Thomas Kiley for the new chief and those that supported Marlin Lively as chief. The Defendant police officers, Christopher Paoletti and Richard Bernaud, were part of the group that supported Marlin Lively. While Detective DeSanty belonged to the group that opposed him and supported Thomas Kiley.

The group that supported Marlin Lively prevailed and Mr. Lively became the acting chief of police for the Trumbull Police Department. Once Mr. Lively became chief, he started to look into Mr. DeSanty's business with Mr. Sicinolfi. Chief Lively sent a letter to DeSanty asking him about the nature of his business and had Defendant Paoletti look into his business with Mr. Sicinolfi.

At about the same time, Chief Lively and the Defendants began to look into Mr. Sicinolfi and his company, even though no complaints about Mr. Sicinolfi or his company had ever been filed with the Trumbull Police Department. Defendant Paoletti pulled Mr. Sicinolfi's pistol permit application and looked back over it. It was the only pistol permit application that Defendant Paoletti ever reviewed. Defendant Paoletti was never asked to review any other pistol permit application other than Mr. Sicinolfi's. Chief Lively called Mr. Sicinolfi three times during the summer of 2001 to discuss his previously approved Town Of Trumbull pistol permit application.

4

In March of 2001, the Defendant police officers stopped by Mr. Sicinolfi's home and spoke to Mr. Sicinolfi's aunt claiming that there was a problem with his car registration. They told Mr. Sicinolfi's aunt that he was driving an illegal car and that it was unregistered. However, Mr. Sicinolfi's car was registered at the time. He had been at the Trumbull Police Department recently with his car for a court ordered supervised visitation.

The Defendants began to stop and interrogate Mr. Sicinolfi's and Mr. DeSanty's visitation clients. In May of 2001, after one of Mr. Sicinolfi's visitation clients dropped off his child at the Trumbull Police Department for a pick-up, Defendant Bernaud followed the parent in his car and pulled him over. Defendant Bernaud then proceeded to ask the client questions about why he was at the Police Department and what he knew about Mr. Sicinolfi.

Then on August 2, 2001, the Defendants deprived Mr. Sicinolfi of his Constitutional rights by illegally arresting and detaining him. On that date, Mr. Sicinolfi was in the visitor's parking lot of the Trumbull Police Department to supervise a court ordered visitation. He was waiting in his car for a child to be returned from one parent and to be picked up by the other parent.

The Defendant police officers, Paoletti and Bernaud, were on duty as police officers and inside the Trumbull Police Department. As Mr. Sicinolfi waited outside for his visitation clients, Chief Lively handed Defendant Paoletti a letter revoking Mr. Sicinolfi's Town of Trumbull pistol permit. Chief Lively ordered Defendant Paoletti to deliver the letter to Mr. Sicinolfi in the parking lot and to confiscate his Town pistol permit.

The letter mentioned only Mr. Sicinolfi's pistol permit with the Town of Trumbull. The letter did not mention his State of Connecticut pistol permit. As police officers the Defendant's knew, or should have known, that only the State of Connecticut can revoke Mr. Sicinolfi's State of Connecticut pistol permit.

Before delivering the letter to Mr. Sicinolfi, Defendant Paoletti went to Defendant police officer Bernaud and police officer Leos and asked them to join him in approaching Mr. Sicinolfi outside. Defendant police officers where in full police uniform when they approached Mr. Sicinolfi's car. The Defendants had their hands on their service weapons. Defendant Paoletti went to the right passenger side of the car. Defendant Bernaud went to the driver side and officer Leos stood in front of the car. Defendant Paoletti handed Mr. Sicinolfi the letter from Chief Lively revoking his pistol permit with the Town of Trumbull. Mr. Sicinolfi complied with the letter and turned over his Town pistol permit.

The Defendant Paoletti then ordered Mr. Sicinolfi to turn over his State of Connecticut pistol permit. Mr. Sicinolfi knew his rights and knew that only the State of Connecticut could revoke his State permit and refused to turn over his State permit. He The Defendants then told Mr. Sicinolfi he was under arrest for refusing to surrender his State of Connecticut pistol permit. They ordered Mr. Sicinolfi out of his car. Neither Defendant Paoletti nor Bernaud told Mr. Sicinolfi that he was free to leave if he wanted or that he did not have to get out of his car if he so wished. Defendant Paoletti and Bernaud knew that Mr. Sicinolfi was not required by law to surrender his State of Connecticut pistol permit to the Town of Trumbull, but Defendant Paoletti still requested

6

his State permit and after Mr. Sicinolfi refused Defendant Paoletti placed him under arrest.

The Defendant police officers surrounded Mr. Sicinolfi once he got out of his car and again ordered him to turn over his State permit. Later in his incident report for the day, Defendant Paoletti noted that he warned Mr. Sicinolfi he was interfering in a police investigation and was subject to arrest if he did not turn over his State permit. However, there was no police investigation into Mr. Sicinolfi's State of Connecticut pistol permit and the Defendants had no reason to believe Mr. Sicinolfi had committed a crime.

Three times the Defendants told Mr. Sicinolfi he was being placed under arrest. Once Mr. Sicinolfi was out of his car, Defendant Paoletti took out his police issued handcuffs. Mr. Sicinolfi was ordered to put his hands behind his back. Mr. Sicinolfi first took off his watch so it would not be damages when the handcuffs were placed on him. Mr. Sicinolfi then put his hands behind his back. At this point, Defendant Bernaud looked up at the police station. Mr. Sicinolfi followed Defendant Bernaud's eyes and saw Chief Lively standing in one of second floor windows watching the Defendants. Defendant Paoletti then put away the handcuffs. Defendant Bernaud told Mr. Sicinolfi he was under arrest and not to move. The Defendants ordered Mr. Sicinolfi into the police station. The Defendant police officer then grabbed Mr. Sicinolfi by the arms and dragged him into the police station.

Mr. Sicinolfi was never told that he could leave if he so wished and Mr. Sicinolfi never consented to going into the police station. Mr. Sicinolfi was told, and believed, he was being placed under arrest and had no choice.

Once inside the Trumbull Police Department, Mr. Sicinolfi was taken to a waiting area and ordered to stay there and not move. Again, Defendant Paoletti told Mr. Sicinolfi he was being placed under arrest. Neither of the officers ever told Mr. Sicinolfi he was free to leave. Mr. Sicinolfi, believing he was waiting to be processed for an arrest, waited for an hour but the officers did not return. He waited a second hour and the officers had not returned. Neither of the Defendants returned nor told Mr. Sicinolfi he was free to leave. Mr. Sicinolfi waited for a third and then a fourth hour. While Mr. Sicinolfi was waiting, the Defendants Paoletti and Bernaud took Mr. Sicinolfi's visitation clients for that day into the station for questioning. After four hours of waiting and believing he was being placed under arrest, Mr. Sicinolfi then went to the officer at the front desk. He told the officer he was going home to make bail money and that he would wait at home.

The Defendant officers knew Mr. Sicinolfi was a business partner of Detective DeSanty. The Defendant police officers knew that Mr. Sicinolfi had committed no crime. The Defendant police officers made Mr. Sicinolfi believe he was under arrest for refusing to turnover his State of Connecticut pistol permit in order to coerce him into do so. The Defendant police officers abused the authority of their position in order to make a citizen believe he was being arrested for not following a police order—despite the order being illegal.

When the Defendant police officers invoked the power and authority of the State of Connecticut and the Trumbull Police Department to detain Mr. Sicinolfi and have him believe he was being placed under arrest—knowing that he had committed no crime—the Defendants deprived Mr. Sicinolfi of his Fourth Amendment Constitutional right to be free from illegal arrest.

8

After the Defendants illegally arrested Mr. Sicinolfi's the number of referrals his business received for supervised visitations began to decrease. Further, Mr. Sicinolfi was unable to take some of the more contentious visitation cases because he could no longer protect the children in these cases without his pistol permit. Finally, the illegal arrest humiliated and embarrassed Mr. Sicinolfi.

Mr. Sicinolfi his here in Court today to defend his Constitutional right and to be made whole for the injury and damages he has suffered by the Defendant police officers intentional disregard for his rights. Mr. Sicinolfi is here to make sure other citizen's right to be free from a false arrest and unlawful detention are violated by police officers of the Trumbull Police Department again.


RESPECTFULLY SUBMITTED,
THE PLAINTIFF

BY:

ATTY. ERSKINE D. McINTOSH
FEDERAL BAR NO. CT 09743
THE LAW OFFICES OF ERSKINE D. McINTOSH, PC
3129 WHITNEY AVENUE, SECOND FLOOR
HAMDEN, CT 06518-2364
PH: (203) 787-9994
FAX: (203) 848-1213

**COUNSEL FOR THE PLAINTIFF**

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICHOLAS SICINOLFI and | : | |
| THE NICHOLAS-JAMES COMPANY | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | CIVIL ACTION NO.: |
| TOWN OF TRUMBULL, | : | 3:03 CV 929 (AWT) |
| MARLIN LIVELY, | : | |
| ANN MOORE, | : | |
| RICHARD BERNAUD and | : | |
| CHRISTOPHER PAOLETTI, | : | |
| Defendants. | : | July 5, 2006 |

## DEFENDANTS' STATEMENT IN LIEU OF OPENING STATEMENT

The Defendants in this case are Richard Bernaud and Christopher Paoletti. There is no dispute that Mr. Bernaud and Mr. Paoletti were both members of the Trumbull Police Department in the year 2001. There is also no dispute that at some point in August 2001, both Bernaud and Paoletti came into contact with the Plaintiff, Nicholas Siconolfi, while he was at the parking lot of the Trumbull Police Department. What is in dispute is whether Mr. Siconolfi was arrested on August 2, 2001 while he was at the Trumbull police Department. The Defendants will present evidence to show that Mr. Siconolfi was never arrested on that day or any other day by any member of the Trumbull Police Department.

You will hear about the background of this case, including a number of events that occurred years before the date that the Plaintiff alleges he was arrested.

First, you will hear about a pistol permit application that the Plaintiff submitted to the Trumbull Police Department in the year 1999.

You will hear testimony from James Lively, who served as the Town of Trumbull's Acting Chief of Police in 2001. Mr. Lively will testify that as part of his duties as Acting Chief of Police, he conducted a department-wide review of two matters, which are related to the Plaintiffs' claims. First, Mr. Lively supervised the review of applications for the issuance of pistol permits in the Town of Trumbull for the preceding years. Second, Mr. Lively conducted an investigation of the outside employment activities of all members of the Trumbull Police Department. Mr. Lively will testify that those two investigations together revealed some areas of concern where the Plaintiff's pistol permit application was concerned.

The evidence will show that the Plaintiff, Nicholas J. Sicinolfi, was also known by the name "Nick Sarno." The evidence will also show that Mr. Sicinolfi and a former detective of the Trumbull Police Department, James DeSanty, were business partners in February, 1999, at the same time that the Plaintiff's pistol permit application was submitted. And, there is no dispute that the Plaintiff's pistol permit application was processed by that same business partner, James DeSanty.

Jim Lively, the former chief of police who oversaw the review of pistol permit applications, will testify as to the particular concerns that were raised when it came to the Plaintiff's application. The first concern was that the application should not have been reviewed by James DeSanty, who was the Plaintiff's business

partner at the same time that he was a Trumbull police officer. The second concern was that an investigation of the Plaintiff's pistol permit application showed that the information the Plaintiff filled in on his application was at times incomplete and at other points appeared to be false.

For example, the Defendants will show that the Plaintiff, Nicholas Siconolfi, did not list his alias "Nick Sarno" in his application when asked to "List all other names by which you have been known." Mr. Sicinolfi's application stated that he had served in the Armed Forces, but the United States Department of Defense stated that it had no record of the Plaintiff serving in the military. Mr. Sicinolfi's application stated that he had experience with pistols and revolvers through his "military service," but this statement appeared to be false in light of the information that was received from the Department of Defense.

Mr. Lively will testify that, given his concerns about the conflict of interest presented by James DeSanty reviewing the Plaintiff's pistol permit application and what he perceived as incomplete and inaccurate statements in the application itself, he determined that the Plaintiff's pistol permit should be revoked. Mr. Lively will testify that he wrote a letter to the Plaintiff informing him that the permit was being revoked and the reasons why.

You will also hear testimony from Christopher Paoletti and Richard Bernaud as to how they became involved in this matter. Christopher Paoletti will testify that he was directed by the chief of police, James Lively, to conduct an

investigation into the Plaintiff's pistol permit application. Mr. Paoletti will testify as to the steps he took to find out whether the Plaintiff's application was accurate and the information that was uncovered in the course of that investigation. Finally, Mr. Paoletti will testify that on August 2, 2001, the Plaintiff came to the Trumbull Police Department. At that time, James Lively noticed the Plaintiff parked in the police department parking lot.

Mr. Paoletti will testify that he was directed by the police chief to seize the Plaintiff's pistol permit, to determine if he was carrying any firearms, and to investigate his presence in the parking lot. When Paoletti was on his way to the parking lot, he asked Richard Bernaud to assist him. Officer Bernaud will testify that his only involvement with the Plaintiff was a brief meeting in the parking lot of the police department. There is no dispute that the Plaintiff's Town of Trumbull pistol permit was seized by the police officers on August 2, 2001 and that the Plaintiff was given a letter from the chief of police, James Lively, explaining the basis for the seizure of his pistol permit. Mr. Paoletti will testify that Sicinolfi refused on that date to produce his State of Connecticut Pistol Permit when asked to do so.

The Defendants will demonstrate that the Plaintiff was never placed under arrest. The evidence will show that the Plaintiff was never confined or placed in handcuffs. The evidence will also show that the Plaintiff left the police department on his own without having to ask for permission to leave.

investigation into the Plaintiff's pistol permit application. Mr. Paoletti will testify as to the steps he took to find out whether the Plaintiff's application was accurate and the information that was uncovered in the course of that investigation. Finally, Mr. Paoletti will testify that on August 2, 2001, the Plaintiff came to the Trumbull Police Department. At that time, James Lively noticed the Plaintiff parked in the police department parking lot.

Mr. Paoletti will testify that he was directed by the police chief to seize the Plaintiff's pistol permit, to determine if he was carrying any firearms, and to investigate his presence in the parking lot. When Paoletti was on his way to the parking lot, he asked Richard Bernaud to assist him. Officer Bernaud will testify that his only involvement with the Plaintiff was a brief meeting in the parking lot of the police department. There is no dispute that the Plaintiff's Town of Trumbull pistol permit was seized by the police officers on August 2, 2001 and that the Plaintiff was given a letter from the chief of police, James Lively, explaining the basis for the seizure of his pistol permit. Mr. Paoletti will testify that Sicinolfi refused on that date to produce his State of Connecticut Pistol Permit when asked to do so.

The Defendants will demonstrate that the Plaintiff was never placed under arrest. The evidence will show that the Plaintiff was never confined or placed in handcuffs. The evidence will also show that the Plaintiff left the police department on his own without having to ask for permission to leave.

At the conclusion of this trial you will be asked to answer several questions, the most important of which is "Was the Plaintiff ever actually arrested?" The Defendants will demonstrate that the answer to that question must be "No." The Defendants submit that when the evidence is concluded, you should return a verdict that states that there was no arrest on August 2, 2001.

DEFENDANTS, RICHARD BERNAUD
and CHRISTOPHER PAOLETTI

By: _____
Stuart E. Brown
945 Hopmeadow Street
Simsbury, CT 06070
Phone: (860) 651-1333 ext. 140
Fax: (860) 651-1888
E-mail: sbrown@hgesq.com

# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT
### (Hartford)

*************************************

|  |  |  |
|---|---|---|
| | * | |
| **NICHOLAS SICONOLFI,** | * | |
| | * | |
| **V.** | * | **CIVIL ACTION NO.** |
| | * | **3:03 CV 929 (AWT)** |
| | * | |
| **RICHARD BERNAUD,** | * | |
| **CHRISTOPHER PAOLETTI** | * | |
| | * | **July 5, 2006** |

*************************************

## JURY INSTRUCTIONS

The Plaintiff, Mr. Siconolfi, has brought this action under a provision of the United States Code, Title 42, Section 1983, which gives a person the right to bring a lawsuit for a violation of a constitutional right by a police officer acting in an official capacity. In order to prevail on this claim, the Plaintiff must prove two things:

1.  The Defendant police officers acted under the color of law, and

2.  that the Defendant police officers deprived the Plaintiff of one or more constitutional right.[1]

The Plaintiff claims that the Defendant police officers deprived him of his constitutional right to be free from false arrest under the Fourth Amendment of the United States Constitution. The Plaintiff contends that on August 2, 2001 the Defendants falsely arrested the Plaintiff outside the Trumbull Police Department by ordering him out of his vehicle and into the police

---

[1] 42 U.S.C. § 1983; *Gomez v. Toledo*, 446 U.S. 635 (1980); *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

1

station, without probable cause. The Defendants contend that the Plaintiff was not arrested and that their actions were appropriate in light of the investigation of the Plaintiff's activities.

The first element of the Section 1983 claim that the Plaintiff must establish is that the Defendants were acting under the color of law. Acting under the color of law means "under pretense of law" and simply means acting in one's capacity as a police officer. The Plaintiff does not have to prove that the Defendants were acting within the law, if they were acting as police officers, then they were acting under the color of law.[2]

The second element of the Plaintiff's Section 1983 claim is that he was deprived of a federal constitutional right by the Defendants. In this case, the Plaintiff contends that the Defendant police officers violated his Fourth Amendment right to be free from false arrest under the United States Constitution. The Defendant police officers have committed a false arrest under the Fourth Amendment if you find that: (1) the Defendants intentionally confined the Plaintiff, (2) the Plaintiff was aware of the confinement, (3) the Plaintiff did not consent to the confinement, and (4) the Defendants had no probable cause to confine the plaintiff.[3]

As to the first element that the Plaintiff was intentionally confined by the Defendant or Defendants, the term "intentionally confined" means an act that has been done with the purpose of imposing a confinement, or with knowledge that such confinement will, to a substantial certainty, result from it.[4] It is not necessary to find that the Defendants had a specific intent to deprive the Plaintiff of his constitutional right, or that the Defendants acted with malice or ill will

---

[2] *Parrot v. Taylor*, 451 U.S. 527 (1981); *Monroe v. Pape*, 465 U.S. 167 (1961).

[3] *Chipperini v. Crandall*, 253 F.Supp.2d 301, 305 (D.Conn. 2003).

[4] *Green v. Donroe*, 186 Conn. 265, 268 (1982).

in order to find for the Plaintiff.  The Plaintiff is entitled to relief if the Defendants intended the actions which resulted in the violation of the Plaintiff's constitutional right.[5]

To establish that the plaintiff was "confined", ladies and gentlemen, it is not required that the plaintiff been physically restrained by any or all of the defendants.  Any exercise of force, express or implied, by which in fact a person is deprived of his liberty, is compelled to remain where he does not wish to remain, or is compelled to go where he does not wish to go is a confinement.  While actual force is not necessary, it is essential that the conduct of the person complained of must at least be such as to show that force will be used to detain the plaintiff, if necessary.  With respect to the matters at hand, the question to ask yourselves, is whether a reasonable person, in the same situation, and in light of all of the surrounding circumstances, would have believed that he was not free to leave the police station.[6]

As to the element of consent, the question to determine is whether the Plaintiff consented to being confined by the Defendant or Defendants.  When we speak of consent in this connection, we mean, of course, an action or decision based on the Plaintiff's own free will, not an action or decision into which he was forced by any unlawful means.

If you have found that the Plaintiff had been intentionally confined, you must also answer: Was the Plaintiff's confinement justified?  In order for the Plaintiff's confinement to be justified, the defendants must have had probable cause to arrest the Plaintiff.

Probable cause exists if the facts and circumstances known to the Defendant police officers, and for which they had reasonably trustworthy information, are sufficient to warrant a

---

[5] *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Hudson v. New York City*, 271 F.3d 62 (2d Cir. 2001).

[6] *State v. Northrop*, 213 Conn. 405 (1990).

prudent person in believing that the suspect probably has committed a crime.[7]  The existence of

probable cause to arrest the Plaintiff must be based on the information known to the Defendant

police officer at the time of the arrest and cannot be made on the basis of information obtained

after the arrest.[8]

If you have found that question in the negative, and have found that probable cause did

not exist to confine the Plaintiff, the final questions for you to answer are on the topic of

Qualified Immunity.  Qualified Immunity is a legal doctrine that shields police officers from

being subject to personal liability for damages.  The doctrine extends to official conduct that

does not violate clearly established statutory or constitutional rights of which a reasonable person

would have known.  A police officer, in the case at hand, is entitled to the protection of qualified

immunity if:

> a.  It was objectively reasonable for the defendant officers to believe that probable
>     cause existed; or,
>
> b.  Officers of reasonable competence could disagree on whether probable cause
>     existed.

In evaluating these matters, ladies and gentleman, you are to consider all of the facts

available to the officer at the time of the arrest.  If you find that the Defendants have

demonstrated either that it was objectively reasonable for them to believe that probable cause

existed or that officers of reasonable competence could disagree on whether probable cause

existed, you must find that the defendants have proven their affirmative defense of qualified

---

[7] *Dunaway v. New York*, 442 U.S. 200 (1979); *Brinegar v. United States*, 338 U.S. 160, 175-176 (1949).

[8] *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 570 (2d Cir. 1996).

immunity. If, however, you find that the Plaintiff has established all of the elements of his claim and that the Defendants have not proven their affirmative defense of qualified immunity, your verdict will be for the Plaintiff.[9]

If you determine the Plaintiff's constitutional rights have been violated this entitles the Plaintiff to compensation for the actual damages he has suffered. The Plaintiff must prove the Defendants caused the harm or injuries alleged by the Plaintiff. In determining the question of causation, you should determine whether the Defendants' wrongful conduct was a substantial factor in the resulting injury and harm to the Plaintiff.[10] If you decide for the Plaintiff on the issue of liability, you must then fix the amount of money damages which will reasonably and fairly compensate him for any harm caused by the Defendants' wrongful conduct. In fixing the amount of money damages to the injury and harm suffered by the Plaintiff, you should consider:

1.  The loss of past and future earning capacity.

2.  The reasonable expense of legal services required and received by the Plaintiff to defend his constitutional rights.

3.  The emotional and mental harm to the Plaintiff during and after the incident, including fear, humiliation, and mental anguish, and any emotional harm, fear, or mental anguish the Plaintiff will, with reasonable certainty, suffer in the future.

---

[9] *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Ricciuti v. N.Y.C. Transit. Auth.*, 124 F.3d 123, 128 (2d Cir. 1997); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 569 (2d Cir. 1996).

[10] *Egervary v. Young*, 366 F.3d 238 (3d Cir. 2004); Restatement (Second) of Torts, Section 431 (1965).

If you find for the Plaintiff, and award compensatory or nominal damages, you may award punitive damages. The function of punitive damages is to punish the Defendants for malicious conduct and to deter similar conduct in others. Whether you award any punitive damages should be based on whether you find that the Defendants acted willfully, deliberately, maliciously, or with reckless disregard for the Plaintiff's constitutional rights. If you find that the Defendants have acted in such a manner then you may award punitive damages. You may award punitive damages against one of the Defendants and not the other and may award different amounts against different Defendants. Punitive damages may be awarded even if the violation of the Plaintiff's rights resulted in nominal damages.[11]

BY: _____

**ATTY. ERSKINE D. McINTOSH**
**FEDERAL BAR NO. CT 09743**
**THE LAW OFFICES OF ERSKINE D. McINTOSH, PC**
**3129 WHITNEY AVENUE, SECOND FLOOR**
**HAMDEN, CT 06518-2364**
**PH: (203) 787-9994**
**FAX: (203) 848-1213**

**COUNSEL FOR THE PLAINTIFF**

BY: _____

**ATTY. STUART E. BROWN**
**945 HOPMEADOW STREET**
**SIMSBURY, CT 06070**
**PH: (860) 651-1333- ext. 140**
**FAX: (860) 651-1888**

**COUNSEL FOR THE DEFENDANTS**

---

[11] *Smith v. Wade,* 461 U.S. 30 (1983).